### 16115. McLamb v. Phillips.

Jenkins, P. J.  1. While statutes imposing license taxes and providing for their collection, when designed merely to raise revenue, as in the license of real-estate agents, do not impliedly nullify contracts made in contravention of their provisions (*Toole* v. *Wiregrass Development Co.,* 142 *Ga.* 57, 60-63) ; the general rule of law is that where the license required by the statute is not imposed only for revenue purposes, but requires registration or licensing primarily for the purpose of protecting the public from acts *mala in se,* or detrimental to good morals, or from improper, incompetent, or irresponsible persons, as in the case of unregistered or unlicensed druggists or physicians, their imposition amounts to a positive prohibition of a contract made without a compliance with and in violation of the statute, and by implication renders such a contract void and unenforceable. *Taliaferro* v. *Moffett,* 54 *Ga.* 150, 153; *Murray* v. *Williams,* 121 *Ga.* 63; *Jalonick* v. *Greene County Oil Co.,* 7 *Ga. App.* 309, 311; *Singleton* v. *State,* 14 *Ga. App.* 527 (3), 533; 37 Corpus Juris, 260; 17 R. C. L. 560.

2. The act of 1904 (p. 79), embodied in the Civil Code (1910), §§ 3446-3465, prohibits any "person, firm, or corporation" from engaging "generally, regularly, or collaterally to any other business, in the business of making loans on . . wages, or salaries, or in the business of buying wages or salaries, without first obtaining a license for carrying on such business." (§ 3446.)  Such a license, where the business is to be conducted within the limits of an incorporated city or town, must be obtained from the proper municipal officer issuing licenses, and where conducted without such limits, from the ordinary of the county. (§ 3447.)  As a preliminary condition to the granting of such a license, the applicant is required to file with the mayor of the town, or the ordinary of the county, a five hundred dollar bond, conditioned upon "the faithful performance by the licensee of the duties and obligation pertaining to the business so licensed, and the prompt payment of any

judgment which may be recovered against said licensee on account of damages or other claim arising directly or collaterally from any loan of money or sale of wages or salary." (§ 3449.) The only provision of this act that relates to the raising of revenue or to monies derived from the issuance of such licenses and the giving of such bonds is that the "ordinary or officer issuing the license shall receive, for each license so issued, a fee of one dollar and fifty cents." Thus, the manifest purpose of these statutes is not the raising of revenue, but is the protection of that portion of the population which, because of small means or temporary adversity, is compelled to resort to the borrowing of money on small personal property security from, or the sale of salaries to, improper or irresponsible lenders who have failed to comply with the statutes provided for such protection.

3. Irrespective of whether or not the judge of the superior court was right in overruling the certiorari of the lender or purchaser of the defendant debtor's salary from a judgment of the municipal court· in favor of the defendant, on the ground that the transaction was a loan and not a sale, the judgment of the superior court was nevertheless correct, since, under the undisputed evidence and the testimony of the plaintiff himself, he was at the time of the contracts in question "engaged in the business of buying wages and salaries," as defined by the statute, and "had not complied with the requirements of the act of 1904, embodied in the code sections 3446 et seq. of the Code of 1910, as to giving bond and making oath and obtaining the license required."

*Judgment affirmed. Stephens and Bell, JJ., concur.*

DECIDED JULY 20, 1925. ADHERED TO ON REHEARING, SEPTEMBER 2, 1925.

Certiorari; from Chatham superior court—Judge Meldrim. November 11, 1924.

*H. P. Cobb, R. R. Jackson,* for plaintiff.

*F. R. Youngblood, Dorsey, Howell & Heyman, Mark Bolding,* for defendant.

### ON REHEARING.

JENKINS, P. J. This cause arose on a petition by an alleged purchaser or assignee of wages, against the employee, to collect the amounts represented by two alleged assignments or bills of sale, one for $20.40 and the other for $6.80. The municipal court found for the defendant, and the superior court overruled the plaintiff's certiorari, basing its judgment primarily on the ground that the trial court, under the evidence, was authorized to find that "the transaction was not a bona fide purchase of wages but a loan." There was testimony, as referred to in the judgment, that $15 was actually paid for the $20.40 alleged assignment or sale, and that, several months after this alleged assignment or bill of sale was executed, the defendant executed another assignment in the same

amount, but no money was paid to him, such assignment being made "for no other consideration than the further *forbearance* to collect the amount" previously assigned; and that on the latter date the $6.80 assignment was executed, $5 being paid as its consideration. The plaintiff testified also, in referring to the $20.40 assignment, that "there had been several previous transactions . . involving the same principal sum and the same rate of *discount,*" that "it was often several months before he received payment of the money advanced, and that he forbore enforcing the payment by sending in notice to the employing railroad company or otherwise, for the reason that it would inconvenience [defendant] and everybody concerned." We can not say that, under this testimony, the municipal court, sitting without a jury, and the superior court on certiorari, were unauthorized to find, as to the $20.40 transaction, that, if the original transaction were a bona fide purchase, "there was no room for other transactions involving the same principal sum, neither was there room for the application of a rate of discount," and that "forbearance has no place" in such a transaction. But there appears to be no evidence authorizing such a finding as to the $6.80 assignment. For this reason, and as an additional reason why the judgment of the court below was correct as to the $20.40 item, irrespective of such finding, the original syllabus of this court was planted upon the further ground that both transactions were illegal and unenforceable, even if they be taken as bona fide sales or assignments, since the plaintiff admittedly was then engaged in the "business of buying wages or assignments," and had failed to give the preliminary bond and obtain the license required by the act of 1904, embodied in sections 3446 to 3465 (inclusive) of the Civil Code of 1910. Ga. L. 1904, p. 79. It is only necessary to consider this phase of the ruling, to which the motion for rehearing and the able and scholarly briefs of counsel are directed.

While it is the duty of courts and juries to strip from an alleged assignment or sale of wages the false and fictitious vestments in which it may be clothed, and to look to real facts and circumstances which manifest a usurious loan, notwithstanding express written verbiage, both the Supreme Court and this court have uniformly sustained bona fide actual assignments and sales made in conformity to statute. *Jackson* v. *Johnson,* 157 *Ga.* 189; *Covington*

v. *Rosenbusch*, 148 *Ga.* 459 (1) ; *Cen. of Ga. Ry. Co.* v. *King*, 137 *Ga.* 369 ; *King* v. *State*, 136 *Ga.* 709 ; *Atlanta Finance Co.* v. *Lunsford*, 32 *Ga. App.* 787 (1).

The legislature, by the act of 1904 (Civil Code §§ 3446-3465), as quoted in the second division of the syllabus, enacted an express and positive prohibition against any person engaging "generally, regularly, or collaterally  .  . in the business of buying wages or salaries, without first obtaining a license for carrying on such business," and required the giving of a bond, for the benefit of persons who might be injured by acts or omissions under the statute, as a condition precedent to such a license.   This law, in both its original title and language, covers a legitimate business for the bona fide purchase of wages or salaries, as well as businesses and pretended transactions which are merely camouflages for usurious loans and discount charges.   There seems to have been no subsequent legislation affecting this manner of licensing and transaction of such a legitimate business and sales.   While the act of 1920 (Ga. L. 1920, pp. 215-222; Park's Code Supp. 1922, §§ 1770 (a)-(s)), by its title and language, regulates "the business of making *loans* of $300 or less  .  . and the assignment of wages or salaries, earned or to be earned, when taken as *security for any such loan*" (italics ours), it has been held not to cover a bona fide assignment or sale.   *Tollison* v. *George*, 153 *Ga.* 612 (1), 614; *Atlanta Joint Terminals* v. *Walton Discount Co.*, 29 *Ga. App.* 225, 227.   See also, as to other legislation regulating rates of interest and discount, *Ison Co.* v. *Atlantic Coast Line R. Co.*, 17 *Ga. App.* 459; *Jackson* v. *State*, 5 *Ga. App.* 177.   The act of 1920 nullifies and precludes enforcement of certain loans and salary assignments given to *secure the same* when made in contravention of its provisions as to special licensing by the State bank examiner and as to rates of interest or discount, so that the present transactions would be unenforceable thereunder, if they be treated as loans, as was done by the judge on certiorari (Ga. L. 1920, pp. 220-222; Park's Code Supp., §§ 1770 (m), (p), (q)) ; but nothing in that act or in other legislation has apparently either expressly or by implication repealed the law of 1904 so far as it relates to a business of actual and bona fide buying of wages or salaries.   That original act, to this extent, therefore, remains in full force; and it remains to consider its effect upon the transactions here in

question, if taken in whole or in part as actual purchases or assignments.

The rule expressed in the first division of the syllabus, supported by precedents of the Supreme Court and of this court, is substantially as recognized by other courts and text-writers, that such agreements without the required license are void and unenforceable, "where the license is required for public protection and to prevent improper persons from acting in a particular capacity, and not for revenue purposes only;" and such a general rule has been formerly applied to liquor dealers, and to stockbrokers, pawnbrokers, peddlers, innkeepers, plumbers, and other like professions and vocations. 13 Corpus Juris, 423 (§ 353 (3)) ; 37 Corpus Juris, 269 (§ 138) ; 6 R. C. L. 701 (§ 107), 692 (§ 98) ;. 25 Cyc. 633; Clark on Contracts, 385; Gilley *v.* Harrell (Tenn.), 101 S. W. 424· (5) ; Barton *v.* Port Jackson etc.,· 17 Bard. (N. Y.) 397; Cook *v.* Pierce, 2 Houst. (Del.) 499; People *v.* Board, 122 Ill. App. 40; Buckley *v.* Humason, 16 L. R. A. 423 (2) ; Flora *v.* Hartman, 109 N. E. 846; Johnson *v.* Berry (S. Dak.), 1 L. R. A. (N. S.) 1159; Randall *v.* Tuell (89 Me. 443), 38 L. R. A. 143; Schnaier *v.* Navarre (182 N. Y. 83), 70 L. R. A. 722.

"Where a statute enacts, for the purpose of securing a more effectual compliance with its requirements in respect to the licensing of certain occupations, that no one shall engage in or carry on any such occupation until he shall have obtained a license as provided by law, it is an express prohibition without more particular words." Paul *v.* Bishop, 3 Daly (N. Y.) 109. The statute here in question expressly prohibits the carrying on of the business without the prescribed bond and license. It is manifestly not designed, with a mere nominal license fee of $1.50, to collect or enforce revenue, but is primarily and almost solely intended to protect a great mass of the borrowing population from improper or irresponsible dealers, who might otherwise unduly profit from their distress and necessities. Similar legislation has been recognized by the Court of Appeals of Maryland in Wight *v.* B. & O. R. Co., 125 Atl. 881, 884, to be a proper and legitimate exercise of the police power of the State. As was there said, "In the very nature of the thing, money lenders or wage brokers carry on a business public in its nature, and in dealing with necessitous persons, often incapable through ignorance or the impelling force of their needs

from protecting themselves, have opportunities for extortion and unfair dealing which, unless restrained by proper and reasonable regulations, they may use to the detriment and injury of their patrons."

Nor is it necessary that "a statute should impose a penalty for doing or omitting to do something, in order to make a contract void which is opposed to its operation." Gunter *v.* Lecky, 30 Ala. 591; McGehee *v.* Lindsay, 6 Ala. 16; Black *v.* Manning, 1 Ala. 449; Walker *v.* Gregory, 36 Ala. 180. "The imposition of a penalty by statute is only material in that it shows an intention on the part of the legislature to prohibit the act penalized. It is the prohibition and not the penalty that renders illegal agreements in violation of the statute." Clark on Contracts, 388; 13 Corpus Juris, 420 (§ 351), 424 (§ 356) ; 13 Corpus Juris, 356. The fact, therefore, that the act of 1904 contains no criminal penal provision will not, in the face of its express language and manifest purpose, defeat its inhibitions.

It is further argued on behalf of the alleged purchaser that, since the legislation and alleged business relate only to *mala prohibita* and not to *mala in se,* such contracts will not be avoided. This, however, is not the rule. "Formerly a distinction was made in determining the question whether contracts were illegal between acts *mala prohibita* and those *mala in se,* but the old rule no longer obtains. Either, under all modern authorities, nullifies the contract." 6 R. C. L. 694 (§ 99), 701 (§ 106) ; 13 Corpus Juris, 420 (§ 351) ; Clark on Contracts, 386. The only limitation or exception to this general rule as recognized in this State is that the statute must not be designed primarily for the collection or enforcement of revenue. See, as to the broader rule even as to revenue statutes, in other jurisdictions, Benjamin on Sales (Corbin's ed.), par. 825.

But it is insisted that, since sections 3462 and 3463, embodying the only civil penalties contained in the act of 1904, provide merely that, for failure to observe the requirements of the act, the transgressor "shall forfeit the license and all interest charged on the loan," and "the license under which said business is conducted shall become ipso facto void," such language must be held to comprehend within itself the entire purpose of the legislature, and to preclude entirely any implied forfeiture or avoidance of contracts

made in the absence of the required bond and license. It was this question that caused the grant of the motion for rehearing, as we desired to consider anew this point, and wanted the assistance of the able counsel who appear of record in resolving the difficulty. This contention appears to be without merit. As was argued by counsel for the borrower, "This section relates to persons who have obtained a license, because it would be absurd to say that a person, firm, or corporation having no license at all should 'forfeit the license and all interest charged on the loan.'" Likewise, the language in terms relates only to a "*loan*," and does not cover actual sales of wages or salaries, which are also expressly included in the prohibitory provisions of the act in question. As counsel further urge, "If section 14 is construed to prescribe all the results that follow from a failure to obtain a license, then an unlicensed person, under the act, stands in a better position than a person having a license. The unlicensed person, therefore, would be subjected to less punishment than the licensed person. This would result in an absurdity. It would thus follow that there would be no reason for any person to comply with the act and to obtain a license, and there would be no means whatever provided in the act for its enforcement. It would render the act a nullity, and in effect nullify all its provisions. Every law is to be given a reasonable interpretation, and the policy of the law is to be gathered from the intention of the lawmaking power in the passage of the act. The act itself expressly and in terms prohibits the carrying on of this business by unlicensed persons. Under all the authorities, this prohibition clearly shows the legislative intent to make the business when carried on by an unlicensed person contrary to law, and all contracts made in violation of the statute and of the policy declared therein void and unenforceable. To so hold renders the act reasonable and effective. The holding to the contrary would make the act unreasonable and ineffective, and would impute to the lawmaking power the doing of a vain and idle thing." After full consideration of the additional contentions and arguments presented on rehearing, the original judgment and syllabus are adhered to. *Judgment adhered to. Stephens and Bell, JJ., concur.*