29745. BERNSTEIN *v.* PETERS *et al.*

DECIDED OCTOBER 29, 1942.

*Gazan, Walsh & Bernstein,* for plaintiff in error.

*Hester & Clark,* contra.

SUTTON, J.  J. A. Peters and J. A. Goethe, doing business as Savannah Distributing Company, brought suit against Harry M. Bernstein to recover for certain intoxicating liquors sold and delivered to the defendant in Savannah, Georgia.  The defendant filed an answer denying indebtedness, and by special plea set forth that recovery could not be had for stated reasons.  The court sustained the plaintiffs' general demurrer to the plea but did not pass on certain special demurrers which they filed.  When the case came on for trial before the judge without the aid of a jury it was admitted between the parties that the liability, if any, was for intoxicating liquors in the amount of $1052.76 sold and delivered on June 26, 1940, less a credit of $80, or a net amount of $972.76.  The defendant made an oral motion to dismiss the action on the ground that it did not appear from the petition that the plaintiffs, at the time of the sale, were duly licensed by the State Revenue Commissioner of Georgia, as required by law, to conduct a wholesale business in intoxicating liquors in Chatham County in this State.  Before the court ruled on the motion the plaintiffs tendered an amendment to the petition as follows: "Plaintiff sells liquors at wholesale and is duly licensed as such dealer to sell such at wholesale by the proper governmental authorities of the Federal Government, the State of Georgia, and the City of Savannah."  The defendant objected to the allowance of the amendment on the grounds that (1) there was no allegation in the petition sufficient to support the amendment, and (2) that the amendment failed to show that the plaintiffs were legally licensed to engage in the business of wholesalers of intoxicating liquors at the time when the sale was made.  The court allowed the amendment and overruled the defendant's motion to dismiss, and the amount of the alleged indebtedness, if recoverable, being admitted to be $972.76, the court, on motion of the plaintiffs, rendered judgment in their favor in that amount, plus interest and costs of court.  The exceptions here are to the judgment sustaining the plaintiffs' general demurrer to the plea of the defendant, the allowance of the amendment, the overruling of the de-

fendant's motion to dismiss, and the final judgment which, it is alleged, was necessarily controlled by the previous rulings.

In our view of the case it is controlled by the judgment overruling the defendant's motion to dismiss, and any discussion of the other exceptions is unnecessary. Whether or not the plaintiffs were entitled to recover depends upon whether or not the act of 1938 (Ga. L. Ex. Sess. 1937-38, p. 103), which is codified in the cumulative pocket part to the Code of 1933, Annotated, as sections 58-1001 et seq., authorizing the sale of intoxicating liquors in this State under the conditions therein prescribed, was enacted, not merely as a revenue measure, but as controlling and regulating, in the interest of the public, the business of selling intoxicating liquors, and, if enacted for the latter purpose, and a license to do business be required, whether or not it is shown that the plaintiffs had obtained a license at the time of the sale in question. In *Southern Flour & Grain Co.* v. *Smith,* 31 *Ga. App.* 52, 53 (120 S. E. 36), it was said: "Where the terms of a contract directly involve the infraction of a civil statute not enacted for the purpose of raising revenue, and such infraction is penalized by a fine, or imprisonment, or both, the contract is void and unenforceable. *Conley* v. *Sims,* 71 *Ga.* 161; Civil Code (1910), § 4251 [Code of 1933, § 20-501]. For the case of a statute enacted for the purpose of raising revenue, see *Toole* v. *Wiregrass Development Co.,* 142 *Ga.* 57 (82 S. E. 514)." In *McLamb* v. *Phillips,* 34 *Ga. App.* 210 (129 S. E. 570), it was ruled: "While statutes imposing license taxes and providing for their collection, when designed merely to raise revenue, as in the license of real-estate agents, do not impliedly nullify contracts made in contravention of their provisions (*Toole* v. *Wiregrass Development Co.,* 142 *Ga.* 57, 60-63 [supra], the general rule of law is that where the license required by the statute is not imposed only for revenue purposes, but requires registration or licensing primarily for the purpose of protecting the public from acts *mala in se,* or detrimental to good morals, or from improper, incompetent, or irresponsible persons, as in the case of unregistered or unlicensed druggists or physicians, their imposition amounts to a positive prohibition of a contract made without a compliance with and in violation of the statute, and by implication renders such a contract void and unenforceable." (Citing.) In *Pratt* v. *Sloan,* 41

*Ga. App.* 150, 153 (152 S. E. 275), it was said: "It is the rule in this State, that, where a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are void and unenforceable." See also *Raleigh & Gaston R. Co.* v. *Swanson,* 102 *Ga.* 754 (28 S. E. 601, 39 L. R. A. 275); *Murray* v. *Williams,* 121 *Ga.* 63 (48 S. E. 686); *Lee* v. *Moseley,* 40 *Ga. App.* 371 (149 S. E. 808); *Meinhard* v. *Stillwell Realty Co.,* 47 *Ga. App.* 194 (169 S. E. 732). As far back as *Taliaferro* v. *Moffett,* 54 *Ga.* 150, it was held: "The general rule of law is, that where a license required by statute, is for the protection of the public, and to prevent improper persons from acting in a particular capacity, and is not for revenue purposes only, the imposition of the penalty amounts to a positive prohibition of a contract made in violation of the statute."

Examining the act here involved, we think that the idea of control and regulation of the liquor traffic runs throughout its provisions. In the title itself it is stated that the act is to be known as the " 'Revenue Tax Act to Legalize *and Control* Alcoholic Beverages and Liquors;' to provide for the taxation, legalization, *control, manufacture, importation, distribution, sale, and storage* of alcoholic beverages and liquor; . . to authorize the Revenue Commissioner *to make rules and regulations . . for the . . controlling of the manufacture, sale and distribution of* alcoholic beverages and liquor; . . to provide penalties and punishment for the violation of the terms of this act," etc. Various provisions in the body of the act, which we shall refer to under the Code sections appearing in the cumulative pocket part to the annotated Code, show the plain intention of the legislature that the enactment was not merely for revenue purposes but was aimed at regulation and control of the liquor business in the interest of the public, a business generally recognized as freighted with a peril to the public welfare. The sale of intoxicating liquor is declared to be a *privilege* and not a *right.* Code, § 58-1068. The license provided for is authorized only in those counties in which a majority of those voting at an election, to be held for that pur-

pose, vote in favor of taxing and *controlling* alcoholic beverages and liquor as provided for in the act. No employee of the commissioner shall directly or indirectly, have any interest whatsoever in dealing in alcoholic beverages except in the performance of his official duties (Code, § 58-1012), and under Code, § 58-1022, he is subject to trial and dismissal by the commissioner for any violation of the provision. The commissioner shall provide warehouses or storage places, in any county or counties wherein the sale of distilled spirits is legalized, throughout the State, as in his discretion seems expedient, for the purpose of furnishing ample storage space for the products of all manufacturers or distillers. Code, § 58-1013. The commissioner shall determine and charge a rental for such warehouse or storage space. Code, § 58-1014. Such stored liquors shall not be delivered except to licensed dealers. Code, § 58-1018. It is made a misdemeanor to accept liquor intended for sale except through State warehouses. Code, § 58-1019.

The State Revenue Commissioner, who is charged with the enforcement of the act, and the issuing of licenses as a part of his duties, may decline to issue a license to one who in his reasonable discretion is not a proper party to have such permit. Sale of liquor by a licensee on his premises in unbroken packages of any size will, when such person is convicted on such a charge, make mandatory the revocation of the license by the commissioner. The commissioner shall have the power to revoke or cancel for cause, after hearing, any license issued by him; to adopt and promulgate, repeal or amend, such rules, regulations, standards, requirements, and orders not inconsistent with any law of this State or of the United States as he may deem necessary to *control* the manufacture, sale, etc., of distilled spirits and alcohol in accordance with the provisions of the act and the conditions under which the same may be withdrawn from warehouses and distributed. His agents and inspectors are authorized to enter upon the premises of any person engaged in the manufacture, sale, distribution, storage, or transportation of alcoholic beverages and liquors, at any time for the purpose of inspecting the premises and shall have access during such inspection to all books, records, and supplies relating to such business. A license revoked by the commissioner for the wilful violation of any provi-

sion of the act or rule promulgated by him under the terms and provisions of the act shall not be renewed or reissued for a period of two years from the date of such revocation. Code, § 58-1022. A license may be issued to a manufacturer for the sale of distilled spirits or alcohol in bulk to other distillers or rectifiers. A wholesaler's license shall authorize the holder to engage in the sale of distilled spirits at wholesale to the holder of a wholesale license or to the holder of a retail license for the purpose of resale. A retailer's license shall authorize the holder to sell only in the original and unbroken package or packages, containing not less than one-half pint of distilled spirits or alcoholic beverages each, and shall not permit the breaking of any package or packages on the premises where sold or the drinking of the contents of the said package or packages on the premises where sold. Code, §§ 58-1023, 58-1024, 58-1025, 58-1026. Violation of either of the last named provisions is declared to be a misdemeanor. Code, § 58-1027. In any county in this State where the provisions of the act do not permit the sale of intoxicating liquors, as well as in such counties where sales are permitted, grand juries shall investigate as to illegal sales of liquors and the sheriffs' enforcement of the liquor laws. Code, § 58-1043. Shipments into dry counties are prohibited. Code, § 58-1063. A violation of such provision shall be a misdemeanor, and upon conviction the offender's license shall be revoked by the commissioner. Finally, it is provided that whoever violates any provision of the act, for which no specific penalty is provided, or any of the rules and regulations issued by the commissioner under authority of the act, shall be guilty of a misdemeanor.

Enough has been set forth above to illustrate the plain intention of the legislature that the act in question is not one for revenue purposes only, but provides in numerous details for control and regulation, in the interest of the public welfare, the business of dealing in intoxicating liquors. Accordingly, a contract made in violation thereof is, under the authorities hereinbefore cited, void and unenforceable. It remains only to determine whether or not, as contended by the plaintiff in error, the petition as amended fails to show a compliance with the provision of the statute that a license be obtained as a prerequisite to engaging in such business. In the original petition no allegation whatever

was made as to the possession of a license. By amendment the plaintiffs alleged that they were the holders of a license, but failed to show that *at the time of the sale* of the liquor for which recovery is sought a license had been acquired. It is a well-settled rule of construction that as against a general demurrer, or its equivalent, a motion to dismiss an action, a petition must be construed most strongly against the pleader, and so construed here the petition as amended must be treated as alleging only that the plaintiffs held a license as of the date of the original petition to which the amendment related back, and not that they held a license at the time of the sale of the liquors sued for. "The court, in passing on the sufficiency of the allegations to make out a case, should keep in mind the principle that every material fact which goes to constitute the plaintiff's cause of action must be alleged; that is, he must sufficiently allege every fact which he would be required to prove in order to recover. *Groover* v. *Simmons,* 163 *Ga.* 778 (137 S. E. 237)." *Gulf Life Insurance Co.* v. *Davis,* 52 *Ga. App.* 464, 466 (183 S. E. 640). As stated in 37 C. J. 261, § 142, in respect to licenses: "It is incumbent on a person whose right to recover on a contract is generally dependent upon his having been licensed to plead and prove, as a part of his cause of action, that he had fully complied with the requirements of the license law, or else to plead and prove that, under the circumstances, the requirement was not applicable and he was not required to take out a license or pay a license tax." This rule was applied in *Meinhard* v. *Stillwell Realty Co.,* 47 *Ga. App.* 194 (169 S. E. 732), and is equally applicable here. It follows that the petition as amended, not showing that the plaintiffs held a license at the time of the sale, as required by the statute, the contract relied upon is void and unenforceable. The court erred in overruling the defendant's motion to dismiss the action, and all proceedings thereafter were nugatory.

*Judgment reversed.* *Stephens, P. J., and Felton, J., concur.*