39491. ROBINSON et al. v. COLONIAL
DISCOUNT COMPANY, INC.

DECIDED JUNE 20, 1962—REHEARING DENIED JULY 9, 1962.

*N. T. Anderson, Victor K. Meador*, for plaintiffs in error.

*J. Sam Plowden*, contra.

*Hansell, Post, Gardner, Brandon & Dorsey, Allen Post, J. William Gibson*, for parties at interest not parties to record.

EBERHARDT, Judge. ■ ■. The defendants argue that the note sued on shows upon its face that it is usurious, but recognize that it falls within the pattern of *Robbins v. Welfare Finance Corp.*, 95 Ga. App. 90, 94 (3) (96 SE2d 892) and say that the statute (*Code Ann.* § 25-315(a)) was erroneously interpreted or construed in *Robbins* and that we should now overrule it.

Plaintiff insists that the general demurrer to its petition can not reach this question, urging *Customers Loan Corp. v. Jones,*

100 Ga. App. 653 (112 SE2d 362) as authority for that position. We do not think that *Customers Loan* can be used as authority for the proposition since, as is pointed out in Judge Townsend's concurring opinion, the court concluded there that no usury appeared on the face of the petition or the notes. If the contrary were true, we would here feel impelled to overrule that case for the reason that it did not take into consideration the provision of *Code Ann.* § 25-9903 wherein it is asserted that "Any loan contract made in violation of this Chapter shall be null and void." It must follow that if a note or loan contract made under the Industrial Loan Act shows on its face that it is infected with usury it is absolutely void and there could be no recovery on it. In that situation it is elementary that a general demurrer will reach the problem and raise the issue.

Since the day when Jacob robbed his brother Esau of his birthright, and before, there have been those who would overreach a fellow who is pressed with need. These, like the poor, will be with us always, and thus we must and do have regulatory laws for the lending business of both the scrupulous and the unscrupulous.[1]

If this were a case of first impression it is possible that we might come to some conclusion different from that in *Robbins* as to what a proper construction of the phrase "face amount of the contract" should be. But that decision has been in the books since it was rendered in 1957. This court declined to overrule and followed it in *Haire v. Allied Finance Co.*, 99 Ga. App. 649 (109 SE2d 291). The legislature has been in session each year since *Robbins* was rendered. Indeed, it was in session at the time the decision was handed down, and at that same session and a month subsequent thereto the act was amended,[2] and it was amended again in 1959.[3] Neither of the amendments made any change in *Code Ann.* § 25-315(a) or in the interpretation thereof as found in the *Robbins* decision, nor has the legislature sought to effect any such change at any of its subsequent

---

[1]See generally, Meador, Loan Sharks in Georgia (1948).

[2]Ga. L. 1957, p. 331.

[3]Ga. L. 1959, p. 55.

sessions. The law has been administered and enforced in accordance with the *Robbins* interpretation and many thousands of contracts have been entered into upon the faith of it. Rights have been fixed under contracts thus made to such an extent that any disturbance of *Robbins* by us would adversely affect a great segment of our economy as represented by the industrial loan business.[4] If any change in that interpretation is wise or desirable, the matter addresses itself to the General Assembly where the change could be made in a manner that would not wipe out vested rights under contracts honestly made and in good faith relying upon what we have said the act means. The defendant here, and others who are similarly situated, is entitled to the benefit of the doctrine of stare decisis, for this is a situation in which vested property rights are to be affected. *Moore v. Atlanta Transit System*, 105 Ga. App. 70, 86 (123 SE2d 693), and citations; *Harrison v. McHenry*, 9 Ga. 164, 171 (52 AD 435); *Adams v. Brooks*, 35 Ga. 63, 65. "The court has found adherence to the settled rule especially desirable in cases involving the security of contracts, property interests, wills and trusts

---

[4]Pursuant to *Code Ann.* §§ 25-306a and 25-310 the Georgia Industrial Loan Commissioner has, on May 4, 1955, promulgated rules and regulations providing, inter alia (Part III, Rule V): "Each licensee shall on or before the 15th day of April, each year, file with the Commissioner an annual report on forms prescribed by the Commissioner. The report shall consist of an annual statement concerning the foundation of the licensed company, a statement of operations for the preceding calendar year, including specific information regarding insurance on all loans, and an analysis on charges, loans, security and delinquent accounts."

The annual reports of all licensees are on file in the office of the Commissioner. These indicate that the total of loans made under the provisions of the act during the year was $281,401,620. The total outstanding at the beginning of 1961 was $180,873,297.49. Approximately 60% were made for amounts less than $1,000.

and commercial transactions in general." Moore, Stare Decisis, p. 34 (1958). Consequently we must again decline the request to overrule *Robbins,* and follow it instead. The note here involved is identical in terms with that in *Robbins,* and under that decision no usury is involved.

■ But the general demurrer should have been sustained for yet another reason. It is obvious from an examination of the note in question that the loan was made pursuant to provisions of the Industrial Loan Act (Ga. L. 1955, pp. 431-445; *Code Ann. Ch.* 25-3). There is such a recital on the face of the note. The act provides that "On and after the effective date of this Chapter no person within the operation of this Chapter shall . . . engage in the business of making such loans of $2,500 or less, without a license from the Commissioner as provided in this Chapter." *Code Ann.* § 25-303. "Person" is defined as including "individuals, co-partnerships, associations, corporations, and all other legal and commercial entities." *Code Ann.* § 25-304. As the penalty, "Any loan contract made in violation of such Chapter [*Code Ann. Ch.* 25-3] shall be null and void." *Code Ann.* § 25-9903.

As was said in *McLamb v. Phillips,* 34 Ga. App. 210 (1) (129 SE 570), "the general rule of law is that when the license required by the statute is not imposed only for revenue purposes, but requires registration or licensing primarily for the purpose of protecting the public from acts *mala in se,* or detrimental to good morals, or from improper, incompetent, or irresponsible persons . . . their imposition amounts to a positive prohibition of a contract made without a compliance with and in violation of the statute, and by implication renders such a contract void and unenforceable. *Taliaferro v. Moffet,* 54 Ga. 150, 153; *Murray v. Williams,* 121 Ga. 63; *Jalonick v. Greene County Oil Co.,* 7 Ga. App. 309, 311 [66 SE 815]; *Singleton v. State,* 14 Ga. App. 527 (3), 533 [81 SE 596]; 37 Corpus Juris, 260; 17 R.C.L. 560." Accord: *Bernstein v. Peters,* 68 Ga. App. 218(1), 220 (22 SE2d 614). See *Knight Drug Co. v. Naismith,* 73 Ga. App. 793, 796 (38 SE2d 87) and citations. While *Mc-Lamb* involved the now-repealed "salary buyers" provisions

of the Code (formerly *Code Ch.* 25-2)[5], the reasoning is equally applicable to the Industrial Loan Act of 1955.

In the case sub judice, the only allegation by the plaintiff of its status was that it is "a corporation duly chartered under the laws of the State of Georgia, and is therefore entitled to sue in its own name." A petition must be construed in the light of its omissions as well as its averments, and there is no averment here of compliance with the Industrial Loan Act. The above allegation does not measure up to what is probably a minimum allegation that plaintiff was "duly licensed" approved recently in *Nussbaum v. Shaffer,* 105 Ga. App. 430 (1) (124 SE2d 659), a case involving a real estate broker.

The issue here is apparently of first impression in Georgia. Under the law repealed by the Industrial Loan Act, evidence of compliance with a substantially similar requirement for a license was held to be a condition precedent for recovery. *Jobson v. Masters,* 32 Ga. App. 60 (2), 68 (122 SE 724). Some of the other conditions precedent to recovery laid down in *Jobson* have been applied to rulings on pleadings. See *Southern Loan Co. v. McDaniel,* 50 Ga. App. 285, 287 (5) (177 SE 834). Several other cases inferentially support the position that an allegation of compliance with the licensing provision of the act is necessary to set out a cause of action. *Frazier v. City Investment Co.,* 42 Ga. App. 585 (1) (157 SE 102); *Robinson v. Morris Plan Co.,* 47 Ga. App. 737 (171 SE 394); *Taylor v. Merchants Mut. Credit Corp.,* 100 Ga. App. 634 (112 SE2d 188); *Customers Loan Corp. v. Jones,* 100 Ga. App. 653, supra. See *Ellis v. Williams,* 56 Ga. App. 181 (192 SE 491); *Craddock v. Woods,* 60 Ga. App. 377 (3 SE2d 924); *Gersh v. Peacock,* 89 Ga. App. 57 (1) (78 SE2d 543).

Generally, the rate of interest and other charges in connection with loans are governed by *Code Title* 57. The Industrial Loan Act grants an exemption from the operation of this title to those properly licensed. In *Crowley v. Hughes,* 74 Ga.

---

[5]Criminal convictions for failure to have the required license have been sustained. E.g., *Knight v. State,* 64 Ga. App. 693 (14 SE2d 225).

App. 531, 533 (3) (40 SE2d 570), the court quoted the following language approvingly: " 'Irrespective of whether a public or private statute must be pleaded, in all cases, one who seeks the benefit of a statute must, by averment and proof, bring himself within its provisions. The complaint must plead every fact essential to the cause of action under the statute.' 41 Am. Jur. 355, § 92." Accord: *Moody v. Foster*, 74 Ga. App. 829, 835 (2c) (41 SE2d 560); *Gaddy v. Silverman*, 86 Ga. App. 239, 242 (71 SE2d 277) and citations. There the court required *both* allegation and proof of the statutory exemption in order for the plaintiff to set out a cause of action. It is this exemption from the general law relating to interest that requires the pleading of a compliance with the licensing provisions and these dual statutes distinguish the case from situations where only a single statute is involved. E.g., *Knight Drug Co. v. Naismith*, 73 Ga. App. 793, supra, where it was held that a failure to comply with a professional licensing statute was a matter of defense, and need not be pled.

It was, therefore, error to overrule the defendant's general demurrers.

*Judgment reversed. Carlisle, P. J., and Russell, J., concur.*