## 59179. FINANCEAMERICA CORPORATION v. DRAKE.

CARLEY, Judge.

This case again presents for review the propriety of our decision in *Consolidated Credit Corp. v. Peppers,* 144 Ga. App. 401 (240 SE2d 922) (1977). The sole issue in that Industrial Loan Act (ILA) case was the meaning of the phrase "face amount of the contract" (hereinafter, FAC) as used in Code Ann. § 25-315 (b). The phrase is used in both subsections (a) and (b) of Code Ann. § 25-315, setting forth the permissible charges on loans governed by the ILA. "Every licensee hereunder . . . may charge, contract for, collect and receive interest and fees . . . as hereinafter provided: (a) Charge, contract for, receive and collect interest at a rate not to exceed eight per cent. per annum of the face amount of the contract, whether repayable in one single payment or repayable in monthly or other periodic installments. On loan contracts repayable in 18 months or less, the interest may be discounted in advance, and on contracts repayable over a greater

period, the interest shall be added to the principal amount of the loan ... (b) Fee for making loan. In addition thereto, charge, contract for, receive, or collect at the time the loan is made, a fee in an amount not greater than eight per cent. of the first $600 of the face amount of the contract, plus four per cent. of the excess ..." In *Peppers* this court sought to reconcile what was termed as "tensions" inherent in two apparently conflicting definitions of FAC as that phrase is used in calculating interest under Code Ann. § 25-315 (a). In *Robbins v. Welfare Fin. Corp.,* 95 Ga. App. 90, 95 (96 SE2d 892) (1957), it had been held that FAC within the meaning of § 25-315 (a) and in the context of a loan for 18 months was the total payback amount of the loan, a computational base which included interest. In *McDonald v. G. A. C. Fin. Corp.,* 115 Ga. App. 361 (2) (154 SE2d 825) (1967), a case involving a note repayable in more than 18 months, this court declined to overrule *Robbins* and again employed FAC as meaning the total payback amount of the loan. However, *McDonald* then used as the computational base for calculating interest on the loan under Code Ann. § 25-315 (a) the "principal amount" of the loan, a figure equaling FAC *exclusive* of interest. In *Peppers* this court traced this apparent inconsistency to the provision of Code Ann. § 25-315 (a) which permits the discounting of interest on loan contracts repayable in less than 18 months, the effect of which is to lend the amount of interest so discounted. Since the note in *Robbins* was repayable in 18 months and the interest was discounted and the note in *McDonald* was for greater than 18 months and the interest thus not discounted, this court held in *Peppers* that the holding in those two cases were reconcilable if FAC within the meaning of Code Ann. § 25-315 (a) meant not the total payback amount of the loan but rather "the amount necessary for a borrower to borrow in order to obtain the amount desired." *Peppers,* 144 Ga. App. supra at 404. Based upon this definition of FAC in Code Ann. § 25-315 (a) *Peppers* then held that FAC as used in § 25-315 (b) involving loan fee calculation meant the same — "amount borrowed." "As is apparent from the decisions in *Robbins* and *McDonald,* subsection (a) [of Code Ann. § 25-315] allows interest to be charged on the amount that is borrowed, and only on that amount. We see no reason to believe the legislature, using the same language, intended to supply a different computational base in subsection (b)." *Peppers,* 144 Ga. App. 401, supra at 403. Then, going the last step, *Peppers* held that a loan fee for a loan repayable in greater than 18 months calculated from FAC defined as "total payback amount of the loan" (which would include interest), rather than calculated from FAC defined as "amount borrowed" (which would exclude interest), would be excessive under the ILA.

While we agree with and ratify the *Peppers* construction of Code Ann. § 25-315 (b), we believe — for the reasons set forth herein — that *Peppers* was incorrect in holding that "[t]here is no reason to believe that the meaning of FAC is any different in the loan fee provisions at [Code Ann.] § 25-315 (b)." *Peppers,* 144 Ga. App. 401, supra at 403. We, therefore, overrule it and decline to follow it insofar as it gave retroactive rather than prospective effect to the definition of FAC in Code Ann. § 25-315 (b) as "the amount borrowed" exclusive of interest in loans repayable in greater than 18 months.

As discussed, FAC was first defined in *Robbins.* "The words 'face amount of the contract' can only refer to *the amount of the obligation as shown on the promissory note* . . . not merely to the [amount] which the [borrower] obtained in cash or as payment of prior obligations. The contract is for not only the amount the debtor desires for his own use, but for the amount it is necessary for him to borrow in order to obtain what he needs for his own use. The words 'face amount of the contract' are clear and unambiguous." (Emphasis supplied.) *Robbins,* 95 Ga. App. supra at 95. The loan fee under Code Ann. § 25-315 (b) in *Robbins* was thus calculated on FAC defined as the total payback amount of the loan. *Robbins* survived attempts to secure its overruling in *Haire v. Allied Fin. Co.,* 99 Ga. App. 649 (109 SE2d 291) (1959), and *Robinson v. Colonial Discount Co.,* 106 Ga. App. 274 (126 SE2d 824) (1962). The *McDonald* decision was, however, apparently the first case to address the definition of FAC in Code Ann. § 25-315 (a) in the context of a non-discounted loan, one repayable in greater than 18 months. And, as *Peppers* notes, the court in *McDonald* again declined to overrule *Robbins,* and re-adopted the definition of FAC as "total payback amount" but employed as the computational base for calculation of interest under Code Ann. § 25-315 (a) the "principal amount" of the undiscounted loan, i.e., FAC exclusive of interest or, as it was termed in *Peppers,* the "amount borrowed." However, *Peppers* failed to note that *the loan fee* in *McDonald* was clearly calculated under Code Ann. § 25-315 (b) by using as the definition of FAC the "total payback amount of the loan" as had been the case in *Robbins.* This is apparent from the following calculations, using *McDonald's* figures:

| | |
|---|---|
| $984.00 | "FAC" |
| -135.72 | Interest |
| | |
| 848.28 | "Principal amount of the loan" |
| -627.48 | Cash received by borrower |

| 220.80 | |
| -157.44 | Insurance fees under Code Ann. § 25-315 (c) |
| $ 63.36 | Loan fee under Code Ann. § 25-315 (b) |

Thus the loan fee was calculated under Code Ann. § 25-315 (b) using FAC in its *Robbins* meaning of "total amount of the payback" as the computational basis:

$$8\% \text{ of } \quad \$600 = \$48.00$$
$$+ 4\% \text{ of } \quad 384 = 15.36$$

Total Payback    $984 = $63.36 Loan Fee

and *not* FAC as meaning the "amount borrowed" (*Peppers*) or "principal amount of the loan" (*McDonald*):

$$8\% \text{ of } \quad \$600.00 = \$48.00$$
$$+ 4\% \text{ of } \quad 248.28 = 9.93$$

"Principal Amount of the Loan"    $848.28 = $57.93

A similar analysis demonstrates that the loan fee in *Gentry v. Consolidated Credit Corp.,* 124 Ga. App. 597 (184 SE2d 692) (1971), was likewise calculated using FAC within its *Robbins* "total payback" meaning. The figures in that case are:

| $936.00 | "FAC" |
| -129.10 | Interest |
| 806.90 | "Principal amount of the loan" |
| -614.41 | Cash received by borrower |
| 192.49 | |
| -131.04 | Insurance fees |
| $ 61.4(4) | Loan fee. |

Thus the loan fee in *Gentry* was calculated under Code Ann. § 25-315 (b) by employing the definition of FAC within its *Robbins* meaning:

$$8\% \text{ of } \quad \$600 = \$48.00$$
$$+ 4\% \text{ of } \quad 336 = 13.44$$

Total Payback    $936 = $61.44 Loan fee

and *not* within its meaning under Code Ann. § 25-315 (a) of the

"principal amount of the loan" for calculating interest:

$$
\begin{array}{rrl}
8\% \text{ of} & \$600.00 & = \$48.00 \\
+\ 4\% \text{ of} & 206.90 & = \quad 8.28 \\
\hline
\text{"Principal Amount of the Loan"} \quad \$806.90 & = \$56.28
\end{array}
$$

Thus even though both *McDonald* and *Gentry* use "principal amount of the loan " — a figure which excludes interest — rather than FAC in determining the computational basis for the calculation of interest under Code Ann. § 25-315 (a), it is clear that both decisions retain FAC in its meaning as the "total payback amount of the loan" — a figure which includes interest — in determining the amount of the loan fee under Code Ann. § 25-315 (b). Thus, while *Peppers* is correct in holding that a definition of FAC as "amount borrowed" would reconcile the holdings of *Robbins* and *McDonald* insofar as the calculation of interest is concerned, that decision is in error in holding there to be no reason to believe FAC should be likewise defined for purposes of calculating loan fees under subsection (b) of Code Ann. § 25-315. Were the *Peppers* definition of FAC in subsection (b) applied in *McDonald* and *Gentry* the loan contracts therein would have been usurious for the reason stated in *Peppers* — the *loan fee* in those cases was calculated on a computational base *which included interest* even though the loans were non-discountable.

In the instant case, the loan fee was calculated, as in *Robbins, McDonald* and *Gentry,* on the basis of the definition of FAC in Code Ann. § 25-315 (b) as "total payback amount of the loan." This calculation was based upon FinanceAmerica's reliance upon its "rate book" which in turn was based upon "specific representations made by officials from the Comptroller's office of the State of Georgia . . . that the values stated in this Rate Book and the computer program, which produced the same charges as the rate book, were derived by computations which complied with the method deemed proper by the Comptroller General of Georgia (Industrial Loan Commissioner) for the calculation of loan fees and interest under the Georgia [ILA]." The affidavit of the Assistant Deputy Industrial Loan Commissioner establishes that FinanceAmerica's rate book and its loan contract with Drake "are in accordance with the manner in which this Office enforced and interpreted the [ILA], before the decision in the *Peppers* case, and is in accordance with the administrative interpretation this Office then recognized in its enforcement and supervisory activities as the manner in which [ILA] contracts of 36 months in duration must be computed." This administrative interpretation was in turn based upon reliance on the interpretation of FAC as meaning the total payback amount of the note contained in

*Robbins, McDonald* and *Gentry.* "In reliance on these decisions, [the Commissioner] deemed it proper for a licensee to compute the loan fee based on an amount including cash advance, fee *and interest,* and not on cash advance and fee without interest. [Administrative] enforcement activities were based on this concept, and [administrative] instructions to licensees were based on this concept." Thus the evidence in this case demonstrates that Finance America charged a loan fee under Code Ann. § 25-315 (b) in accordance with the adminstrative interpretation of that statute which in turn was based upon, if not explicit judicial approval of that method, at least apparent judicial sanctioning thereof. "The administrative interpretation of the act given by [the Georgia Industrial Loan Commissioner] is entitled to consideration in the determination by this court of the manner in which fees and charges allowed by law should be calculated. [Cit.]" *Robbins v. Welfare Fin. Corp.,* 95 Ga. App. 90, 95, supra.

We decline to overrule the holding in *Peppers* that FAC means the "amount borrowed" in both subsection (a) and (b) of Code Ann. § 25-315. The issue addressed in cases prior to *Peppers* was the meaning of FAC under subsection (a) of that statute and the *Peppers* definition does fit "perfectly as the basic meaning of FAC in the interest provisions at Ga. Code § 25-315 (a)." *Peppers,* 144 Ga. App. 401, supra at 403. *Peppers* was the first case to *specifically* address the question of the meaning of FAC under the loan fee provision of § 25-315 (b). We adhere to the holding in *Peppers* that FAC means "amount borrowed" under that subsection. We overrule *Peppers,* however, insofar as it gave retroactive rather than prospective application to that definition. As we have shown and as *Peppers* concedes, FAC has always been employed by the judiciary to mean the "total payback amount of the loan," though in *McDonald* and *Gentry* the computational base employed for calculating interest under Code Ann. § 25-315 (a) was obliquely termed the "principal amount of the loan" or FAC exclusive of interest. And as we have shown in the instant case but as was not adequately demonstrated to the court in *Peppers* and subsequent cases following *Peppers,* while the *Robbins* definition of FAC — total payback amount — was cited with apparent approval in *McDonald* and *Gentry*, decisions involving non-discounted loans, and interest then determined under Code Ann. § 25-315 (a) not on FAC but on the basis of "principal amount of the loan," the loan fee under subsection (b) in those cases was in fact calculated on FAC as defined in *Robbins.* Thus *McDonald* and *Gentry* apparently sanctioned two definitions of FAC depending upon whether interest is being calculated under subsection (a) of Code Ann. § 25-315 or loan fees under subsection (b) of that statute.

Based upon the *Robbins* definition of FAC, subsequent ILA decisions upholding *Robbins* including *McDonald* and *Gentry,* and administrative interpretations of those decisions, the loan in the instant case was made using the "principal amount of the loan" — FAC exclusive of interest — in calculating interest under Code Ann. § 25-315 (a) and FAC — total payback amount of the loan — in calculating loan fees under Code Ann. § 25-315 (b). Thus in all regards the loan in the instant case complied with the definition of FAC in subsection (b) as had gained tacit judicial approval and explicit administrative interpretation. In other words, based upon *Robbins, McDonald* and *Gentry,* and the administrative interpretations of those decisions, we are of the opinion that FinanceAmerica had "reason to believe that the meaning of FAC [was] different in the loan fee provisions at § 25-315 (b)." *Peppers,* 144 Ga. App. 401, supra at 403. FinanceAmerica based its loan contract with Drake on these decisions and on the administrative interpretation of both those decisions and the statute itself. The loan here would not have been usurious under *McDonald* or *Gentry* or the administrative interpretation thereof. Prior to *Peppers,* there was no foreshadowing that a loan contract which complied with the *result* approved in *Robbins, McDonald, Gentry* and administrative interpretations thereof would be usurious. We are, therefore, of the opinion that, while the holding in *Peppers* should not be overruled, that holding should be given effect prospectively only.

Prior to a determination that FAC as used in Code Ann. § 25-315 (b) has the same meaning in the context of a non-discounted ILA loan as that phrase in subsection (a) "the existence of the statute as it was relied upon is '... an operative fact and may have consequences which cannot justly be ignored. The past cannot be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects, . . . Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature of both the statute and of its previous application, demand examination ... (A)n all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified.' [Cit.] ... [T]he Supreme Court of the United States has on occasion refused to give a ruling retroactive effect if doing so would unjustifiably disrupt existing relationships... That court has chosen to make prospective those rulings which would produce such hardships if applied retroactively. [Cit.] Reflected in these decisions is a careful balancing of constitutional interests and reliance by people on the old rules of law which is both wise and practical. [Cit.]" *Allan v. Allan,* 236 Ga. 199, 207-208 (223 SE2d 445) (1976). Based

upon consideration of the factors enunciated in *Allan* and Chevron Oil Co. v. Huson, 404 U. S. 97 (92 SC 349, 30 LE2d 296) (1971), we are compelled to conclude that the *Peppers* decision is one which should be limited to prospective application only. "In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, [Cit.], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, [Cit.]. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' [Cit.] Finally, we have weighed the inequity imposed by retroactive application, for '[W]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' [Cit.]" Chevron Oil Co. v. Huson, 404 U. S. 97, supra at 106-107. *Peppers,* as was also the case in Chevron Oil Co., not only addressed a question of first impression in this court — the definition of FAC in Code Ann. § 25-315 (b) — but also *effectively* overruled the tacit approval of *Robbins'* definition of FAC — total payback amount of the loan — as the proper computational base for calculating loan fees in non-discounted loans contained in *McDonald* and *Gentry* and also the administrative reliance on those decisions in authorizing loan fees thus calculated. When FinanceAmerica entered into this contract with Drake it was relying if not on prior judicial interpretation at least on the prior judicial sanction of such a computational base and on the explicit administrative approval of such calculations. "It cannot be assumed that [it] did or could foresee that this consistent [judicial sanctioning and administrative interpretation of the proper computational base for the calculation of loan fees] would be overturned. The most [it] could do was to rely on the law as it then was. [Under these circumstances] '[w]e should not indulge in the fiction that the law announced in *Peppers* had always been the law and, therefore, that those who did not avail themselves of it waived their rights.' [Cit.]" Chevron Oil Co., 404 U. S. 97, supra at 107. And, considering the prior judicial and administrative history of the definition of FAC in the context of Code Ann. § 25-315 (b), we do not believe that to give *Peppers* retroactive effect — so as to make "null and void" a loan contract entered into by a lender who has in good faith relied upon that past history — would further the purpose and operation of the ILA to "provide regulation of the business of making loans of $3,000." Code Ann. § 25-302. To hold usurious a loan

contract which would have been non-usurious under prior decisions of this court does not promote stability in the regulation of such business. And, considering both the judicial and administrative history of the definition of FAC in the loan fee context, the good faith reliance thereon by lenders in calculating such fees — as demonstrated by adherence to *Robbins, McDonald* and *Gentry* — and the purpose of the ILA, we are of the opinion that giving retroactive effect to *Peppers* so as to make loan contracts entered into before that decision was rendered "null and void" would produce the most "substantial inequitable results" on vested contractual rights. Chevron Oil Co., 404 U. S. 97, supra at 108. See also Rollinger v. J. C. Penney Co., 192 NW2d 699 (S. D. 1972); Hare v. General Contract Purchase Corp., 249 SW2d 973 (Ark. 1952).

For all the reasons stated, we conclude that the holding in *Peppers* should not be applied retroactively so as to automatically invalidate an ILA contract entered into by the lender in good faith reliance upon the definition of FAC as contained in *Robbins, McDonald* and *Gentry* and upon the commissioner's administrative interpretation of the meaning of FAC as contained in those appellate decisions. Rather, *Peppers* should be applied prospectively only so as to limit its definition of FAC in Code Ann. § 25-315 (b) to only those non-discounted loan contracts entered into after the date of its decision after which time such good faith reliance by lenders would not be a compelling argument for forestalling its application. Cases decided since *Peppers* which give automatic retroactive application to its holding to such loan contracts without regard to the lender's good faith reliance upon the definition of FAC in *Robbins, McDonald* and *Gentry* and the commissioner's interpretation of that phrase as contained in those decisions are hereby overruled insofar as such automatic retroactive application of *Peppers* was used as the basis for holding the contract "null and void." *Carter v. Swift Loan & Fin.,* 148 Ga. App. 358 (251 SE2d 379) (1978); *Layton v. Liberty Loans,* 152 Ga. App. 504 (263 SE2d 167) (1979); *Wessinger v. Kennesaw Fin. Co.,* 151 Ga. App. 660 (261 SE2d 649) (1979); *Shelley v. Liberty Loan Corp.,* 153 Ga. App. 47 (264 SE2d 537) (1980); and *Sanders v. Liberty Loan Corp.,* 153 Ga. App. 859 (1980). Since the trial court in the instant case gave automatic retroactive application to the holding in *Peppers* without consideration of the evidence demonstrating the lender's good faith reliance upon appellate decisions involving FAC pre-dating *Peppers* and upon the commissioner's administrative interpretation of the computation of FAC tacitly approved in those decisions and thus found the loan contract "null and void," we reverse. Henceforth, *Peppers* has prospective application only and should not be used as the grounds for automatic invalidation of a loan

contract entered into before the date that *Peppers* was decided.

*Judgment reversed. Deen, C. J., Quillian, P. J., Smith, Banke, Birdsong and Sognier, JJ., concur. Shulman, J., concurs specially. McMurray, P. J., concurs in the judgment only.*

ARGUED JANUARY 8, 1980 — DECIDED APRIL 24, 1980 — REHEARING DENIED JUNE 11, 1980 —

*Joseph G. Davis, Jr., John C. Porter, Jr.,* for appellant.
*E. Graydon Shuford,* for appellee.
*Ralph S. Goldberg,* amicus curiae.

SHULMAN, Judge, concurring specially.

From the time of the decision in *Consolidated Credit Corp. v. Peppers,* 144 Ga. App. 401 (240 SE2d 922), until the appearance of the majority opinion in the instant case, I have been concerned with the possibility that the effect of *Peppers* on the small loan industry is inequitable. However, no argument or analysis presented to this court has convinced me that the potentially harsh result is outside the scope of the risk assumed by Industrial Loan Act licensees as a concomitant to the right granted by the Act to exact interest and charge fees which would render the loans usurious in any other context. Though I remain unconvinced of the *necessity* of limiting *Peppers,* the demonstration in the majority opinion of the tacit approval of the court in *McDonald v. G. A. C. Fin. Corp.,* 115 Ga. App. 361 (154 SE2d 825), of the method of computation forbidden by *Peppers* persuades me to acquiesce in the limitation of the application of *Peppers* to loan contracts executed after the date of that decision.