**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

**v.**

**J. B. BATES, Jr., Defendant.**

**Civ. A. No. C81–281R.[1]**

United States District Court,
N. D. Georgia,
Rome Division.

June 30, 1982.

---

1. Together with *State Mutual Automobile Insurance Company v. Camp*, No. C81–262R; *State Farm Mutual Automobile Insurance Company v. Glenn*, No. C81–263R; *State Farm Mutual Automobile Insurance Company v. Bohannon*, No. C81–264R; *State Farm Mutual Automobile Insurance Company v. Johnson*, No. C81–265R; *State Farm Mutual Automobile Insurance Company v. Satterly*, No. C81–266R; *State Farm Mutual Automobile Insurance Company v. Scoggins*, No. C81–282R; *State Farm Mutual Automobile Insurance Company v. Deering*, No. C81–296R; *State Farm Mutual Automobile Insurance Company v. Edwards*, No. C81–298R; *State Farm Mutual Automobile Insurance Company v. Alexander*, No. C81–299R; and *State Farm Mutual Automobile Insurance Company v. Pike*, No. C81–314R.

All the above cases concern the same basic issues. However, for convenience, the Court will discuss the issues within the framework of the captioned case only.

Because the instant cases call into question the constitutionality of Ga.Code Ann. § 56–3404b(b) as applied to plaintiff, the State of Georgia, through its Attorney General, has been notified and invited to submit a brief on the constitutional issues. *See* 28 U.S.C. § 2403(b). The State has filed a brief urging the Court to find the statute constitutional.

Eugene G. Partain, Robert M. Travis, Thomas D. Harper, Powell, Golstein, Frazer & Murphy, Atlanta, Ga., J. Clinton Sumner, Rogers, Macgruder, Hoyt, Brinson & Sumner, Rome, Ga., Richard G. Greer, Greer, Klosik & Daugherty, Atlanta, Ga., for State Farm.

Clifton M. Patty, Jr., Ringgold, Ga., for J. B. Bates, Jr.

Clifford J. Steele, Atlanta, Ga., for Satterly.

William D. Sparks, Mundy & Gammage, Cedartown, Ga., for Camp, Glenn, Bohannon, Johnson and Scoggins.

W. Benjamin Ballenger, Summerville, Ga., for Deering.

Wade C. Hoyt, III, Rome, Ga., for Edwards and Alexander.

William Ralph Hill, Jr. and James A. Secord, Lafayette, Ga., for Pike.

Michael Bowers, Atty. Gen. and Mark Dickerson, Asst. Atty. Gen., Atlanta, Ga., for the State of Ga.

## ORDER

HAROLD L. MURPHY, District Judge.

On October 22, 1980, the Court of Appeals of Georgia issued its decision in *Jones v. State Farm Mutual Automobile Insurance Company*, 156 Ga.App. 230, 274 S.E.2d 623 (1980) (hereinafter *Jones* or *Jones v. State Farm*). *Jones* has left in its wake a flurry of lawsuits in which insurers statewide seek a determination that the implications of *Jones* do not apply to scores of other identical insureds. That issue is before the Court in these eleven cases.

*Jones v. State Farm* held that the insurer's failure to obtain separate signatures of the applicant for insurance, indicating the latter's acceptance or rejection of each level of optional personal injury protection (PIP) coverages, did not conform to the requirements of Ga.Code Ann. § 56–3404b(b). The court concluded that § 3404b(b) imposed upon an insurer an evidentiary burden to prove ·that the insured was offered and rejected the additional PIP coverage. This burden was satisfied only by the separate signatures of the insured on the application form next to each of the various optional PIP coverages the insurer offered. The opinion stated that the insurer could rectify its omissions through Ga.Code Ann. § 56–3404b(c), that is, by giving the insured the opportunity to accept or reject, in writing, the optional coverages required to be offered under Ga.Code Ann. § 56–3404b(a). 156 Ga.App. at 233, 274 S.E.2d 623. The court suggested that, following the § 3404b(a) offer, Jones could accept the offer, tender the necessary premiums, and enforce the resulting contract for additional PIP benefits, even *after* the initial claim for benefits was satisfied. 156 Ga.App. at 234, 274 S.E.2d 623.

The Supreme Court of Georgia, after initially deciding to review the case, dismissed the writ of certiorari as improvidently granted on July 7, 1981. The motion for rehearing and extraordinary motion for rehearing were denied on July 23, 1981, and July 31, 1981, respectively. *State Farm Mutual Automobile Insurance Company v. Jones*, 248 Ga. 46, 280 S.E.2d 837 (1981).

The *Jones* decision, and the Supreme Court's refusal to hear the case, proved a clarion call to countless Georgia automobile liability insurance policyholders (and their attorneys). Following *Jones*, hundreds of insureds who had received policy benefits for personal injuries in amounts less than the maximum optional coverage under § 56–3404b(b), tendered premiums and made demands upon their insurers for payment of the additional benefits impliedly authorized by *Jones.*

The insurers (and their attorneys), cognizant of their potentially immense exposure due to these *Jones* claims, beat a hasty trail to the state and federal courts in Georgia. There they sought a declaration that *Jones* did not mean what it said, or at a minimum, that there were limits to its implications. Since Georgia law apparently does not allow an insurer to raise its defenses to a claim by its insured through a declaratory judgment action, *Baron v. State Farm Mutual Automobile Insurance Company,* 157 Ga.App. 16, 18–19, 276 S.E.2d 78 (1981), and because the insurers' citizenship is diverse from that of the majority of their Georgia policyholders, the bulk of the actions are being maintained in federal court.

## I

### A

In the instant matter, plaintiff State Farm Mutual Automobile Insurance Company (State Farm) brought this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202. Jurisdiction is predicated upon diversity of citizenship of the parties and an amount in controversy in excess of $10,000.00, excluding costs and interest. State Farm seeks a declaration that defend-

ant Bates is not entitled to personal injury protection insurance coverage benefits from plaintiff in an aggregate amount greater than $5,000.00. In other words, State Farm desires a ruling that *Jones* does not apply to Bates' demands. In the alternative, State Farm requests reformation of its insurance contract with Bates to provide that Bates' personal injury protection coverage is no greater than $5,000.00.

Bates answered, denying that State Farm is entitled to either the declaration of limited liability or reformation. He counterclaimed for $45,000.00, the extent of the excess PIP coverage he claims he never rejected. In the alternative, he seeks reformation of the contract of insurance to evidence his entitlement to up to $45,000.00 additional personal injury protection benefits.

■ Before the Court is State Farm's motion for summary judgment.[2]

### B

For a number of years prior to 1975, defendant Bates maintained a policy of automobile liability insurance with State Farm. On January 10, 1975, defendant, or someone on his behalf, signed an application for automobile liability insurance covering his 1965 Ford Falcon automobile. The effective date of the policy, March 1, 1975, coincided with the effective date of the Georgia Motor Vehicle Accident Reparations Act, Ga.Code Ann. § 56–3401b *et seq.* (also referred to as the No-Fault Law). As such, the terms of the insurance contract had to conform with the dictates of § 56–3404b(b).

The application form contained separate spaces where defendant could accept the

---

**2.** The record also discloses that Bates has moved to join his wife, Helen Bates, as an additional defendant under Fed.R.Civ.P. 19. State Farm has not responded to this motion. *See* Local Rule 91.2 (N.D.Ga.). However, the Court disagrees with Bates' assertion that his wife is a necessary party to this litigation. Although Mrs. Bates is an "insured" under the policy pursuant to Ga.Code Ann. § 56–3402b(b), the record is void of any indication that Mrs. Bates was injured in an automobile

accident and made a claim to State Farm under Mr. Bates' policy. Accordingly, her joinder is not sanctioned by Fed.R.Civ.P. 19 because complete relief can be afforded with the presence of the present parties only. In terms of her interest in this litigation, the Court considers such merely academic and totally indirect, since even if Mr. Bates were to prevail here, Mrs. Bates still would not be entitled presently to any recovery against State Farm. Therefore, the motion for joinder is DENIED.

additional optional coverages in aggregate amounts of $10,000.00, $25,000.00 or $50,000.00, by placing an "X" in the appropriate space. No "X" appeared in any of the spaces. Consistent with § 56–3403b(b), Bates could not elect to accept less than the $5,000.00 minimum PIP.

Bates was issued policy number 6140 436–C11–11A, which was in full effect on September 22, 1978. On that date, Bates was involved in an automobile accident and sustained personal injuries. Curiously, neither party alleges that Bates sought and received compensation for his personal injuries up to the $5,000.00 benefit limit or that Bates suffered personal injuries requiring compensation of more than $5,000.00. However, by letter dated September 16, 1981, defendant, through his attorney requested that State Farm give Bates the opportunity to accept or reject in writing $45,000.00 additional, optional PIP coverages provided by Ga.Code Ann. § 56–3404b(a)(1). The letter also stated that defendant accepted these optional coverages.

Soon after, State Farm brought this action for declaratory relief. In its motion for summary judgment, State Farm presents a variety of reasons why defendant is not entitled to up to $45,000.00 additional PIP coverage benefits. These contentions, as well as the opposing views of defendant, will be addressed further in this Order.

## II

### A

■ In 1974, convinced that there was a better way to handle automobile accident claims, Georgia replaced the traditional tort system with a statutory scheme of no-fault automobile liability insurance. *See generally*, Appleman, Insurance Law and Practice § 5152. The purpose of the no fault law was to eliminate wasteful litigation over moderate to small claims, and to provide for certain minimal insurance coverage for automobile accident victims. *Cannon v. Georgia Farm Bureau Mutual Insurance Company*, 240 Ga. 479, 482, 241 S.E.2d 238 (1978). It also intended prompt payment of victims' claims, and ironically, alleviation of collateral litigation. *id.*

Thus, Ga.Code Ann. Chapter 56–34b requires an owner of a motor vehicle registered in Georgia to have a minimum of $5,000.00 no-fault insurance to compensate insured injured persons. Ga.Code Ann. § 56–3403b(b). Section 56–3404b, the heart of the instant controversy, requires insurers to offer up to $45,000.00 additional, optional PIP coverage. Ga.Code Ann. § 56–3404b(a)(1). This section also specifies the manner in which this optional coverage is to be offered. Ga.Code Ann. § 56–3404b(b) and (c).[3]

**3.** The complete text of § 56–3404b is as follows:

(a) Each insurer shall also make available on an optional basis the following coverage:

(1) an aggregate limit of benefits payable without regard to fault up to $50,000 per person which may be rejected, or reduced to not less than an aggregate limit of benefits payable without regard to fault of $5,000 per person, by written consent of the policyholder. Benefits purchased in excess of $5,000 shall be paid as determined by the insured without apportionment to cover any of the following expenses incurred by the insured but not compensated for under section 56–3403b(b):

(i) Any expenses of the type described in section 56–3403b(b)(1);

(ii) 85 percent of the loss of income or earnings during disability;

(iii) Expenses of the type described in section 56–3403b(b)(3) not to exceed $20 per day; and

(iv) Funeral services and burial expenses not to exceed $2,000 per person; and

In the event of the death of the injured person, survived by a spouse or dependent child or children, compensation under subsections (b)(2) and (b)(3) of section 56–3403b shall be payable after such death as though the deceased were alive but totally disabled, such payment to be made to the spouse, if alive, otherwise to the child or children or the person having legal custody of any child or children, for use of such spouse or children as though awarded as a year's support for the spouse or children, or both. Survivors benefits shall be payable until exhausted, at least monthly.

(2) compensation, without regard to fault, for damage to the insured motor vehicle not to exceed the actual cash value of the vehicle at the time of the loss, including up to $10 per day with a maximum of $300 for the loss of use of such motor vehicle; provided that benefits payable under this paragraph (2) may be subject to

The statute also provides that no insurer may issue a Georgia no-fault automobile liability insurance policy unless it complies with specifics of the statutory scheme, including the minimum coverage requirements. Ga.Code Ann. § 56–3405b(a)(1). Finally, the act provides that the insurer must pay benefits within 30 days after it receives reasonable proof of the fact and amount of loss sustained, in order to avoid imposition of a penalty (up to 25 per cent of the amount due), and attorney's fees. Once it is established that payments were late, the burden is on the insurer to show that its delay was in good faith. Ga.Code Ann. § 56–3406b(b).

## B

The present case concerns the interpretation and application of the above statutes, particularly § 56–3404b(b), to the facts of this case in light of the *Jones v. State Farm* decision. Therefore, a discussion of that opinion is a necessary backdrop to resolution of the parties' claims.

Twice within six months in 1977, Jones applied for no-fault automobile insurance through State Farm. Both times, State Farm's agent completed the application form, and as in this case, the applicant signed on the one space provided for his signature. Neither completed application form showed Jones applying for more than the $5000.00 minimum coverage (basic PIP).

Subsequently, Jones was injured when his car was run off the road. Eventually, Jones, through his attorney, submitted to State Farm schedules of his medical expenses and lost wages resulting from the accident. At the request of the insurer, a claims form was filled out two weeks later. Six weeks later, State Farm sent drafts for $5,000.00 and $1,441.46 to Jones, who returned the checks to State Farm. One month later, State Farm sent two more checks, for $5,000.00 and $4,289.46 in settlement of Jones' claims. These checks were cashed, but accepted only as partial payments of the claims.

After fruitless negotiations, Jones brought a two-count complaint against State Farm in Muscogee State Court. Count I alleged that the facts merited imposition of statutory attorney's fees and punitive damages under the late payment provisions of § 56–3406b. Count II claimed entitlement to benefits available only under the optional PIP coverage provisions of § 56–3404b. Jones' motions for partial summary judgment were denied, and State Farm's cross-motions for summary judgment were granted. Jones appealed.

As to Jones' claim under § 3406b, the denial of summary judgment was affirmed. Recognizing that State Farm's payments were late, the court held that the granting of summary judgment in favor of State Farm was error. However, since State Farm was not given the opportunity to show its good faith in delaying payment of Jones' claim, Jones also was not entitled to summary judgment. *Jones v. State Farm*, 156 Ga.App. at 234–235, 274 S.E.2d 623.

The Court of Appeals ruled that the grant of State Farm's summary judgment motion as to Count II also was erroneous. Jones contended that the additional optional coverages were never explained to him in

deductibles at the written election of the policyholder.

(b) Each application for a policy of motor vehicle liability insurance sold in this State must contain separate spaces for the insured to indicate his acceptance [or] rejection of each of the optional coverages listed in subsection (a) above and no such policy shall be issued in this State unless these spaces are completed and signed by the prospective insured.

(c) On and after the effective date of this Amendment, all named insureds in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages required to be offered by this Chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this section: Provided, however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy, shall constitute a rejection of the optional coverage.

(d) The optional coverage required to be offered under this section need not be offered upon the renewal of any policy where the offer has been previously made by the same insurer and has been rejected in accordance with this section unless the named insured requests such coverage in writing.

conformity with § 56–3404b(b).[4] He asserted that the legislative requirements are met only when the application form provides, and the insured is given the opportunity to sign, separate spaces to indicate his acceptance or rejection of the optional coverages.

In reaching Jones' claim, the court found the central issue to be "the extent to which Code Ann. § 56–3404b(b) impose[s] a burden on no-fault insurers to obtain specific written acceptance or rejection from each application of each coverage listed in Code Ann. § 56–3404b(a)?" *Jones v. State Farm, supra,* at 232, 274 S.E.2d 623.

Initially, the *Jones* court detailed the intention of § 56–3404b in an unhesitating manner.

> The legislative intent underlying the enactment of Code Ann. § 56–3404b is clear. The language of the statute is phrased in unequivocal terms: "Each insurer *shall* also make available ... the following coverage"; Each application ... *must contain separate spaces* for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) above." This mandatory language leaves no doubt that the General Assembly placed strong significance upon compelling insurers to offer no-fault coverages over and above the minimum basic coverage. The language used in Code Ann. § 56–3404b further enunciates the clear legislative mandate that insurers offer optional coverages to applicants for no-fault insurance and that an applicant's waiver of his privilege to obtain optional coverages be made *knowingly and in writing.*

*id.* (Emphasis in original).

The court then held that § 56–3404b imposed an evidentiary burden upon no-fault insurers to demonstrate that the optional coverages were expressly offered to, and knowingly accepted or rejected in writing by, each of their applicants for no-fault insurance. Central to the Court of Appeals' decision was how an insurer could fulfill its statutory obligation in order to be deemed to have complied with the mandate of the Code.

> This evidentiary burden is satisfied if and when an insurer can demonstrate that its applicants completed and signed separate spaces on the no-fault insurance application form indicating their acceptance or rejection of each of the optional coverages listed in Code Ann. § 56–3404b(a). If the application does not conform to the requirements of Code Ann. § 56–3404b(b), the insurer can meet its evidentiary burden by showing that it otherwise provided its no-fault insureds with "an opportunity to accept or reject, in writing, the optional coverages required to be offered under [Code Ann. § 56–3404b(a)]" in compliance with the provisions of Code Ann. § 56–3404b(c), and that the optional coverages were then effectively rejected.

*id.,* at 233, 274 S.E.2d 623.[5]

Applying this to the facts in *Jones,* the court noted that State Farm failed to obtain the separate signatures required for the proper acceptance or rejection of the additional levels of coverage. Citing *Unigard Security Insurance Company v. Schaefer,* 572 S.W.2d 303 (Tex.1978), the *Jones* court rejected as not probative the deposition testimony of State Farm's agent that Jones had been offered but had rejected these optional coverages.[6] Since State

---

4. *See* n. 3, *supra.*

5. For the text of Ga.Code Ann. § 56–3404b(a) and (c), see n. 3, *supra.*

6. That case is instructive here. There the court concluded that the pertinent Texas statute governing insurance policy exclusions and endorsements required an express, written rejection by the insured.

We believe this calls for an express written rejection in language demonstrating that the insured has some knowledge of what he is rejecting. Because the provision of such mandated coverage is a matter of public policy, a claim of rejection thereof should not be determined simply by reference to rules which courts otherwise apply to determine

Farm had failed to show that its application form tracked the express statutory language, the Court of Appeals found the grant of summary judgment in favor of State Farm erroneous.

At this point, it is helpful to capsulize what was encompassed in the *Jones* court's ruling on State Farm's summary judgment motion. It consisted of four individual holdings. First, it held that § 3404b was intended to make sure that applicants for no-fault insurance were offered optional PIP coverage. Then, the court held that this statutory purpose translates into the requirement that the applicant accept or reject in writing each optional coverage by separate signatures for each option accepted or rejected. Third, the insurer could fulfill its statutory obligation only by showing that it offered the optional coverages and that each one was accepted or rejected by the separate signatures of the applicant. Finally, if the insurer did not conform to the statutorily-mandated signature requirements, it must offer the optional coverages to the applicant/insured pursuant to § 56–3404b(c).

The court elaborated upon this final point in reviewing the denial of Jones' cross-motion for summary judgment. The *Jones* court found that the motion rightfully was denied. Viewing Count II of Jones' complaint as a prayer for reformation of contract, the court concluded that such a claim was not cognizable in the Court of Appeals. First, as an equitable remedy, such relief was not available in the Muscogee State Court (nor on review in the Court of Appeals). *See generally, Patterson v. Loggins,* 142 Ga.App. 868, 237 S.E.2d 469 (1977).

Second, a factual dispute remained as to whether Jones ever had received the § 56–3404b(c) notice required by the statute, and which the Court of Appeals sanctioned as the necessary remedial step in case of noncompliance with § 56–3404b(a) and (b). The court held that § 3404b(c) "contemplates that insureds who have not had an opportunity to accept or reject the optional no-fault coverage required to be offered under Code Ann. § 56–3404b(a) are deemed to have been given a 'continuing' offer of such coverage from the date of the issuance of the liability policy until 30 days after being given the opportunity in writing to accept or reject the coverage." *Jones v. State Farm, supra,* 156 Ga.App. at 234, 274 S.E.2d 623.

Therefore, reformation was not presently a proper remedy. Because State Farm did not offer properly the optional coverages, or send a 3404b(c) notice to Jones, there was no contract for optional no-fault coverage to reform.[7]

In short, *Jones* held that Georgia's no-fault scheme requires a series of offers with statutorily-imposed terms. The first offer is the $5,000.00 basic PIP coverage, which the insurer must offer and the insured must accept. §§ 56–3403b(b) and 3404b(a). The second offer concerns the optional no-fault coverages. Section 3404b(b) and *Jones* require the optional coverages of § 3404b(a) to be offered, and accepted or rejected by the separate signatures of the applicant. Not offering these statutory terms in the

---

the intent and acts of contracting parties . . . The manifest public policy requires that the "rejection in writing" of this particular statutory coverage be in clear and express language.
*Unigard Sec. Ins. Co. v. Schaefer,* 572 S.W.2d at 308.

7. *Jones* further stated,
"[A]ssuming that Jones did not receive such [3404b(c)] notice, he would, in our opinion, be entitled to 'accept' this offer, tender the premiums and enforce the resulting contract."
*Jones v. State Farm, supra,* 156 Ga.App. at 234, 274 S.E.2d 623.

Of course, this language is *dicta* in that it offers the court's views on the legal effect of a set of facts not in issue. However, this remark further explains, and is entirely consistent with, *Jones'* other statements concerning the no-fault law, which, as described above, were essential to the determination of the cause before the *Jones* court. The *dicta* merely reiterates that, after the insurer complies with the offer requirements of the statute, either initially or to rectify later an omission of the statutory offer, the applicant/insured must be given opportunity to accept or reject this offer. Otherwise, the insurer's duty to offer would be an empty one.

manner specified in § 3404b(b) is paramount to not offering them at all. Therefore, a "continuing offer" exists, remedied by the procedure found at § 3404b(c).

## C

Before turning to the merits of the instant case, the Court must look to the post-*Jones* litigation. Although the Court is aware that some cases are pending in the Georgia appellate courts,[8] it has been presented only with *State Farm Fire and Casualty Company v. Sweat*, No. C81–2056A (N.D.Ga. Mar. 11, 1982). In *Sweat*, United States District Judge Evans held that *Jones*' § 3404b(c) provision constituted a "continuing offer penalty" because it required retroactive, post-risk, additional insurance coverages. Slip. op. at 6–7 and n. 8.

The facts of *State Farm v. Sweat*, for all practical purposes, are identical to the case now before this Court; i.e., it concerned a declaratory judgment action by the insurer seeking a determination that an insured who had suffered a pre-*Jones* automobile accident was not entitled to the additional PIP coverages discussed in *Jones*. Without reaching State Farm's constitutional challenges to § 3404b and *Jones*, Judge Evans concluded that the Georgia courts, if presented with the facts of *Sweat*, would give the *Jones* ruling only prospective application.

Discussing the principles of retroactive application of judicial decisions as analyzed in *Chevron Oil Company v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and as applied in Georgia, *Walker v. Walker*, 247 Ga. 502, 277 S.E.2d 45 (1981); *Strickland v. Newton County*, 244 Ga. 54, 258 S.E.2d 132 (1979); *Allan v. Allan*, 236 Ga. 199, 223 S.E.2d 445 (1976); *Gainesville Financial Services, Inc. v. McDougal*, 154 Ga. App. 820, 270 S.E.2d 40 (1980); and *Financeamerica Corp. v. Drake*, 154 Ga.App. 811, 270 S.E.2d 449 (1980), Judge Evans concluded that retroactive application of the "continuing offer penalty" would work "sub-stantial inequitable results" against the insurers without furthering the purpose and operation of the no-fault act. Additionally, there was no fair warning within the statute of the "penalty" for failing to comply with the statute's terms, as § 56–3404b(c) appears only to deal with insurance contracts in existence on the effective date of the no-fault law. Finally, the *Sweat* court found post-risk coverage to an insured who never intended to purchase the coverage a novel penalty in the insurance field.

## III

### A

In support of its motion for summary judgment, State Farm advances the same arguments in this Court as it did before Judge Evans' court. Nonetheless, Judge Evans' resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another. *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n. 13 (9th Cir. 1977). *See* 1B Moore's Federal Practice ¶ 9.402[1]. By comity and tradition, judges of the same district customarily follow the others' decisions, *White v. Baltic Conveyor Company*, 209 F.Supp. 716, 722 (D.N.J. 1962); *United States v. Anaya*, 509 F.Supp. 289, 293 (S.D.Fla.1980) (en banc). *Cf., Mueller v. Allen*, 514 F.Supp. 998, 1000 (D.Minn.1981) (Court is not irretrievably bound by its own precedents, but in the interest of uniformity, stability, and certainty may follow earlier cases). However, in considering the facts and the law in this case, this Court is convinced that a different result may obtain. *White v. Baltic Conveyor Company*, supra, Cf. *Mueller v. Allen*, supra, at 1000–1001 (A court's decision is not binding upon courts of equal rank). Accordingly, while Judge Evans' Order is due serious consideration, this Court will undertake independent analysis.

---

**8.** Two cases are presently before the Georgia Court of Appeals, *Allstate Insurance Company v. Shuman*, Case No. 63808, and *Flewellan v. Atlanta Casualty Company*, Case No. 38575.

## B

Various defendants argue that State Farm may not adjudicate its claims in this Court by way of the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court disagrees. The Declaratory Judgment Act is a federal procedural vehicle that may be utilized by a federal plaintiff in a case of actual controversy within the jurisdiction of the federal district court. Whether a certain case presents a controversy under Article III of the Constitution is a question of federal law to be resolved independent of state law. *Nashville, Chattanooga & St. Louis Railway Co. v. Wallace*, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730 (1933); *In re Summers*, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945); *M. Swift & Sons, Inc. v. Lemon*, 24 F.R.D. 43 (S.D.N.Y.1959).

Under federal law, a declaratory judgment is available only in cases involving an actual case or controversy, where the issue is actual and adversarial (as opposed to hypothetical and contrived). It may not be made the medium for securing an advisory opinion in a controversy which has not arisen. *Coffman v. Breeze Corporations, Inc.*, 323 U.S. 316, 65 S.Ct. 298, 89 L.Ed. 264 (1945). The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–241, 57 S.Ct. 461, 463–64, 81 L.Ed. 1617 (1937).

Federal courts long have held that an insurance company seeking determination of its liabilities under an insurance contract could utilize the Declaratory Judgment Act for such a purpose. *id.* State Farm's action is a dispute as to legal rights arising from a contract of insurance. Defendant's September, 1981, letter to State Farm demanding retroactive PIP coverage was an appropriate, although not necessarily exclusive, interpretation of *Jones.* State Farm then had the option to comply with the demand or expose itself to possible bad faith penalties and attorney's fees. That some court could concur with State Farm's position does not make State Farm's present predicament any less.

Therefore, the Court finds that this matter is definite and concrete, the parties' positions defined and adversarial, and that the issues are susceptible to judicial determination. The parties had contracted for insurance about which there is a dispute as to its proper interpretation and consequences. The rights and duties of each may or may not be affected by a particular statute or judicial decision. This is subject matter similar to that which courts face daily. In this posture, State Farm need not wait for Bates to file his complaint; "the character of the controversy and of the issue to be determined is essentially the same whether it is presented by the insured or the insurer." *Aetna Life Insurance Co. v. Haworth, supra,* 300 U.S. at 244, 57 S.Ct. at 465.

Moreover, the propriety of this declaratory judgment action is not affected by Georgia's nonrecognition of this procedural rule in this context. *See Baron v. State Farm Mutual Automobile Insurance Company,* 157 Ga.App. 16, 276 S.E.2d 78 (1981). The federal Declaratory Judgment Act involves procedural remedies only, not substantive rights, providing a federal plaintiff with a procedural alternative for judicial relief. *Farmers Alliance Mutual Insurance Company v. Jones,* 570 F.2d 1384 (10th Cir. 1978). *See also Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 674, 70 S.Ct. 876, 880, 94 L.Ed. 1194 (1950). Thus, although this case is before the Court because of diversity jurisdiction, any *Erie*-mandated concerns are inapplicable insofar as they relate to whether the Court may entertain State Farm's claims. Therefore, the motions to dismiss the complaints for declaratory judgment in Nos. C81–262, –263, –264, –265 and –282 are DENIED.

## C

The Court also has been asked to exercise its discretion and abstain from ruling in this case. Although the arguments in support of abstention are alluring, the Court does not find them persuasive.

"Abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Alleghany v. Frank Mashuda Company*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1959). Nonetheless, abstention has been permitted when a case before a federal court contains "special circumstances." *Baggett v. Bullitt*, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964); *Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. 1981).

■ In discussing abstention, the Court considers only the so-called *Pullman*-type abstention as arguably applicable to this case. That doctrine states that a federal court may abstain where, with regard to the salutary policy of refraining from the unnecessary decision of constitutional questions, the state questions can be answered conveniently and authoritatively in a pending state court litigation. *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Meredith v. Winter Haven*, 320 U.S. 228, 236, 64 S.Ct. 7, 12, 88 L.Ed. 9 (1943).

■ However, *Pullman* abstention is appropriate when a statutory provision, as yet unconstrued by the relevant state court of last resort, is sufficiently ambiguous or uncertain to allow a state court interpretation that would moot the federal constitutional question raised. *Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir. 1980). *Compare, Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979). (Of course, under *Erie*, the Court also may view the decisions of the State's intermediate appellate courts as determinative. *West v. A.T.&T. Company*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). Thus, absent ambiguity, abstention lacks utility and thus is improper. *Sheinberg v. Smith*, 659 F.2d 476, 480 (5th Cir. 1981). *Zwickler v. Koota*, 389 U.S. 241, 251 n. 14, 88 S.Ct. 391, 397 n.14, 19 L.Ed.2d 444 (1967). *See also Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971) (Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to resolve the federal constitutional claim).

■ The state statute before the Court does not have the requisite ambiguity that satisfies the threshold criterion for *Pullman* abstention cases. Had State Farm sought construction of § 56–3404b here in the first instance, perhaps another result would be warranted. However, the Court of Appeals has construed 3404b in *Jones*, and that decision is authoritative not only for *Erie* purposes, but also for the meaning and intent of 3404b. That determination is binding on this Court.

■ Therefore, the remaining issue in this case is whether the Court of Appeals' opinion applies to Bates' demands, and if so, whether § 3404b is constitutional. Any "uncertainty" relates to whether the Georgia courts would apply *Jones* retrospectively or prospectively. However, this issue does not present the Court with an ambiguous state scheme, or with "uncertainty" any greater than that existing whenever litigants raise unique state law questions after invoking the Court's diversity jurisdiction. Rather, by borrowing from the cases of certification from federal courts to state supreme courts, the Court finds that there are sufficient sources of Georgia law on the issue at bar to allow the Court to make a "principled rather than conjectural conclusion." *State of Florida ex rel. Shevin v. Exxon Corporation*, 526 F.2d 266, 275 (5th Cir. 1976).

■ The express language of *Jones* and the Georgia cases on retrospective application of judicial decisions provide the Court with sufficient guidance in this case. Thus, "this is not a case where [the Court is] being asked to decide a new issue of state law in the absence of state guidance." *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1320 (5th Cir. 1980). State Farm's claims present perplexing legal issues, but none involve conjecture as to the standards to apply. And although these issues are difficult, that alone does not amount to a proper ground to evade the exercise of diversity jurisdiction. *Meredith v. Winter Haven, supra*, 320 U.S. at 235–236, 64 S.Ct.

at 11–12. *See also, Baggitt v. Bullitt, supra; Duncan v. Poythress, supra,* at 696.[9]

IV

A

In turning to the merits of State Farm's claims, it is necessary to delineate the limited scope of the Court's inquiry. Thus, this Court must adhere to the substance of the *Jones* opinion. In effect, the Court is *Erie*-bound, for

A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable.

*West v. A.T.&T. Company, supra,* 311 U.S. at 236–237, 61 S.Ct. at 183–84. This Court may not disregard the strong language of the Court of Appeals in *Jones* unless it is convinced by other persuasive data that the Georgia Supreme Court would decide otherwise. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). In short, this Court is not empowered to "overturn" *Jones* insofar as that case's holdings are relevant to resolution of this action. *Cf. Reynolds v. State of Georgia,* 640 F.2d 702, 703 (5th Cir. 1981) (Federal courts are not designed to serve as additional appellate reviewers of State Court judgments).[10]

B

The Court mentions these parameters because in some respects, State Farm asks the Court to do what it clearly cannot. Thus, summary judgment for State Farm could not be based upon the insurer's claim of total or substantial compliance with § 56–3404b. Since State Farm's application form in this case is identical to the one in *Jones* (at least State Farm has not argued to the contrary), a ruling favorable to State Farm on this point would "overrule" *Jones.*

Nor can this Court disturb the Court of Appeals' ruling which State Farm characterized as sanctioning "post-risk" insurance agreements. As stated in Part IIB, *supra,* a careful reading of § 3404b and *Jones* points to the conclusion that the no-fault law mandates two statutory offers, and that failure to comply with these offers in the statutorily-designated manner means that the required offer has not been made. Unfortunately for State Farm, the *Jones* court has ruled on any public policy consideration in requiring "post-risk" insurance or the so-called "continuing offer." Although the "post-risk" result of *Jones* possibly may have relevance to whether *Jones* applies retrospectively, this Court is not empowered

---

**9.** Moreover, the line of cases beginning with *United Services Life Insurance Company v. Delaney,* 328 F.2d 483 (5th Cir. 1964) has limited utility here. The Georgia declaratory judgment scheme presently does not grant to an insurer a cause of action in a case of this sort. *Compare Delaney,* at 489 n. 19 (Brown, J., concurring). *See also, W. S. Ranch Company v. Kaiser Steel Corporation,* 388 F.2d 257, 263 (10th Cir. 1967) (Brown, J., concurring and dissenting), *rev'd, Kaiser Steel Corporation v. W. S. Ranch Company,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968).

Additionally, there is a risk here, as in all diversity cases, that the Georgia courts will decide these *Jones* cases in a different manner than this Court. But, the possibility that a federal court may be called upon to decide an as yet undecided issue of state law, "in a manner different from some subsequent authoritative state decision, is not ground for abstention." *Propper v. Clark,* 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949); *Martin v. State Farm Mutual Automobile Insurance Company,* 375 F.2d 720, 722 (4th Cir. 1967).

**10.** *See also Kohr v. Raybestos-Manhattan, Inc.,* 522 F.Supp. 1070 (E.D.Pa.1981), where the court held,

As is a state court, we are guided by our deliberations by legislative enactment and judicial precedents, but unlike a state court, we are not free to overrule existing state precedent or chart the future course of state law in such manner as we see fit.

522 F.Supp. at 1072.

to alter the method of offering no-fault insurance adopted by Georgia's Legislature and confirmed by the Court of Appeals.

## C

Accordingly, the Court must proceed on the basis that *Jones* allows an insured who has not received the mandated optional PIP coverage offer of §§ 3404b(a)–(c) to obtain additional PIP benefits, even after the satisfaction of the minimum PIP coverage claim. The question, then is whether the Georgia courts would apply *Jones* retrospectively to this defendant's pre-*Jones* accident.

At the outset, it is significant, in the Court's view, that *Jones* itself required post-accident offers for retroactive PIP benefits in order to cure properly the original, defective offer. *See, Jones v. State Farm, supra,* 156 Ga.App. at 233–234, 274 S.E.2d 623.

Furthermore, the *Jones* court, rather than casting its reasoning upon public policy, legislative history or common threads running through judicial pronouncements, anchored its conclusion solely on the *statute.* Thus, the need to perfect the nonconforming offer arose from the statute, § 3404b(c), and this optional coverage offer ran from the date of the issuance of the. policy. *id.* at 234, 274 S.E.2d 623.

Finally, the obligations of the parties were set forth in a statute enacted prior to the time that State Farm contracted with Mr. Jones or Mr. Bates. Thus, as the *Jones* decision indicates, the multiple signature and statutory offer requirements were creatures of the statute, and not the *Jones* decision itself.

## D

However, State Farm argues that the factors enumerated in *Chevron Oil Company v. Huson, supra,* militate against the retroactive effect of *Jones* in this case. The Court is of the opinion that faithful adherence to *Jones* and the retroactivity cases dictate that *Jones* applies to the instant controversy.

In diversity cases, the retroactivity of a state judicial pronouncement is a question of state law. *United States v. Estate of Donnelly,* 397 U.S. 286, 297 n.*, 90 S.Ct. 1033, 1039 n.*, 25 L.Ed.2d 312 (1970) (Harlan, J., concurring). The Georgia courts, relying upon various United States Supreme Court cases, apply similar but varying tests to resolve retroactivity cases. Because of these variations, the Court will discuss the cases in which they were utilized, and then discuss the factors in the context of State Farm's assertions.

In *Allan v. Allan,* 236 Ga. 199, 223 S.E.2d 445 (1976), the court held unconstitutional the notice provisions of Georgia's year's support statute, but refused to apply that holding to previously adjudicated year's support proceedings. Citing *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1939), the court rejected an "all-inclusive statement of a principle of absolute retroactive invalidity." *Allan v. Allan, supra,* 236 Ga. at 207, 223 S.E.2d 445. Instead, the court opted for consideration of various factors, such as "[q]uestions of rights claimed to have vested, of status, of prior determinations deemed to have finality and acted upon accordingly, [and] of public policy in the light of the nature of both the statute and of its previous application." *id.* The *Allan* court also considered relevant the unjustified disruptive effect on existing relationships, the hardship obtaining from a retroactive application, and the reliance of the parties on the overturned principle of law. *id.* 236 Ga. at 208, 223 S.E.2d 445.

Thereafter, in *Strickland v. Newton County,* 244 Ga. 54, 258 S.E.2d 132 (1979), the court faced the retroactive application of a case declaring unconstitutional the local option sales tax. It is evident from *Strickland* that retroactive application would have forced the refund of previously collected taxes, and "unjust results would accrue to those who justifiably relied on it." *id.* at 55, 258 S.E.2d 132.

Finally, in *Walker v. Walker,* 247 Ga. 502, 277 S.E.2d 45 (1981), the court was concerned with retrospective application of a

nonconstitutional judicial decision which had overruled an educational trust approved just four years before. *Compare, Coleman v. Coleman*, 240 Ga. 417, 240 S.E.2d 870 (1977) with *Fitts v. Fitts*, 231 Ga. 528, 202 S.E.2d 414 (1973). In holding *Coleman* to prospective effect only, *Walker* abandoned the rule in the already dismembered *Mutual Life Insurance Company v. Barron*, 70 Ga.App. 454, 28 S.E.2d 334 (1943),[11] applying in its stead the rules of *Allan v. Allan, supra,* and *Strickland v. Newton County, supra.*

Recently, the Court of Appeals, while noting the above authorities, has given heed to the factors listed in *Chevron Oil Company v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *Financeamerica v. Drake*, 154 Ga.App. 811, 270 S.E.2d 449 (1980); *Gainesville Financial Services, Inc. v. McDougal*, 154 Ga.App. 820, 270 S.E.2d 40 (1980). In *Financeamerica*, the court refused to follow *Consolidated Credit Corporation v. Peppers*, 144 Ga.App. 401, 240 S.E.2d 922 (1977), insofar as it gave retroactive effect to the permissible charges on loans used in Ga.Code Ann. § 25–315(b).

In *Chevron Oil Company v. Huson, supra,* 404 U.S. at 106–107, 92 S.Ct. at 355–56, the Supreme Court set out three crucial factors to be viewed in retroactivity cases:

(1) Whether the decision to be applied nonretroactively established a new principle of law, either by overruling past precedent on which litigants relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

(2) A balance of the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.

(3) Weigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, a holding of nonretroactivity is required to avoid injustice or hardship.[12]

A federal court exercising diversity jurisdiction is "in effect, sitting as a state court." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 467, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967); *Cole v. Elliot Equipment Corporation*, 653 F.2d 1031, 1034 (5th Cir. 1981). Of course, under *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court must follow state law in a diversity case. But, where no state court has decided a certain issue a federal court must "make an educated guess as to how that state's supreme court would rule." *Nobs Chemical, U.S.A., Inc. v. Koppers Company, Inc.*, 616 F.2d 212, 214 (5th Cir. 1980); *Benante v. Allstate Insurance Company*, 477 F.2d 553, 554 (5th Cir. 1973). *Accord, Pennsylvania Glass Sand Corporation v. Caterpillar Tractor Company*, 652 F.2d 1165, 1167 (3rd Cir. 1981); *Cunninghame v. Equitable Life Assurance Society of the United States*, 652 F.2d 306, 308 (2nd Cir. 1981); *Wilson v. Ford Motor Company*, 656 F.2d 960, (4th Cir. 1981).

In the Court's view, Georgia appellate courts reviewing the issue presented by this case would analyze the more comprehensive factors of the *Financeamerica* case, rather than relying solely on the considerations in *Allan, Strickland* and *Walker*. Inasmuch as

---

11. "The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law."
*Mutual Life Insurance Company v. Barron*, 70 Ga.App. 454, 463, 28 S.E.2d 334 (1943).

12. Because each case in which these factors were applied satisfied all the factors, it is impossible to determine whether the Georgia courts would hold that *all* three considerations must point towards nonretroactivity. *See Valencia v. Anderson Brothers Ford*, 617 F.2d 1278, 1289 (7th Cir. 1980), *rev'd on other grounds sub nom. Anderson Brothers Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) (Since there is a presumption favoring nonretroactivity, all three *Chevron* factors must support prospective application in order to limit the retroactive effect of the decision). Because the Court concludes that no factor points toward nonretroactivity here, it need not address this issue.

the latter cases rely primarily upon the factors of reliance and hardship, it appears that they are subsumed within the third *Chevron Oil* factor.

1. In regards to the first *Chevron Oil* factor, only the factor concerning "a decision of first impression whose resolution was not clearly foreshadowed", is relevant here. In support of its contention that *Jones* fits this description, State Farm makes various arguments which will be discussed separately.

Although no Georgia case has ever discussed the retroactivity factors in terms of a case of first impression, because of approving *dicta* in *Financeamerica, supra*, it is reasonable to conclude that the *Chevron Oil* factors would be applied with equal force in such a case. District Judge Evans so held. *State Farm v. Sweat, supra*, Slip op. at 19–20. This Court concurs in that conclusion.

Thus, the question is whether *Jones'* holding was "not clearly foreshadowed". In *Sweat*, the District Court rejected State Farm's assertion that the separate signature requirement was not clearly foreshadowed, Slip op. at 22, but held that prior to *Jones*, the statute did not provide sufficient warning of the "continuing offer" penalty. *id.*

It is of course no help to State Farm on this first point to argue that the separate signature requirement was not foreshadowed merely because it failed to comply. Moreover, as Judge Evans held, § 56–3404b(b) is explicit in stating that "no such policy shall be issued unless *these* spaces are completed and *signed* by the prospective insured." *id.* at 21 (emphasis supplied).

However, in regard to the second concern, the Court must respectfully part company with the *Sweat* finding. A reading of § 56–3404b establishes that the no-fault law sets out various obligations and duties. It first evidences the intent of the no-fault law that prospective insureds be offered optional PIP coverages. Thus, "[e]ach insurer shall also make available on an optional basis the following coverage: . . . an aggregate limit of benefits payable without

regard to fault up to $50,000 per person which may be rejected . . . by written consent of the policyholder." § 56–3404b(a)(1). "Each application for policy of motor vehicle liability insurance sold in this State must contain separate spaces for the insured to indicate his acceptance [or] rejection of each of the optional coverages listed in subsection (a) above and *no policy shall be issued in this State unless these spaces are completed and signed by the prospective insured.*" § 56–3404b(b) (emphasis supplied).

As the language of the statute indicates, all policies must comply with the separate signature requirement. The statute then expressly states how this was to be accomplished in the first instance, and when there has been no previous compliance. Subsections (c) and (d) of § 5404b state:

(c) On and after the effective date of this Amendment, *all named insureds* in existing motor vehicle liability policies *who have not previously responded to an offer to accept or reject the optional coverages required to be offered* by this Chapter *shall be given an opportunity to accept or reject, in writing, the optional coverages* required to be offered under this section: Provided, however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy, shall constitute a rejection of the optional coverage.

(d) *The optional coverage required to be offered under this section need not be offered upon the renewal of any policy where the offer has been previously made* by the same insurer *and has been rejected in accordance with this section* unless the named insured requests such coverage in writing.

(emphasis added).

To hold that violation of these provisions in turn leads to an unforeseen penalty is to ignore subsections (c) and (d). These subsections expressly denominate the action that must be undertaken to insure full com-

pliance with subsections (a) and (b). This procedure is consistent with the scheme of statutory offers imposed by the no-fault law. This is not a "penalty", but merely the legislatively-prescribed method of fulfilling the law's purpose and obligations.

*Jones* did not create this remedy; it only applied the facts of the case. While that opinion's use of the term "continuing offer" to describe the remedy for not complying with § 56–3404b(b) did not mirror the exact statutory language, its previous discussion of subsection (c) described the same remedy. As the Court noted previously, *Jones'* discussion of subsection (c) was not *dicta*, but necessary to the resolution of the case and construction of the statutory framework. *See* pp. 814–815 n.7, *supra.*

In short, the Court does not subscribe to the view that prior to *Jones*, § 56–3404b contained no corrective mechanism for an insurer to comply with the statute's requirements of separate signatures and multiple offers. The direction was contained in the statute all along. That State Farm failed to recognize that subsection (c) applied to more than policies in existence prior to March 1, 1975, makes the subsection (c) "re-offer" no less foreseeable than subsection (b)'s separate signatures.

2. The second *Chevron Oil* factor requires the Court to balance the merits of each case, by examining the prior history of the rule, its purpose and effect, and whether retrospective operation will further or retard its operation. In the context of § 56–3404b, the history of rule merges into the no-fault law's purpose; that is, the Legislature had determined that the traditional tort and fault system provided an inadequate and burdensome method of handling automobile liability insurance policies and accident compensation claims, and replaced it with the no-fault scheme. *See* Part IIA, *supra.* In *Jones*, the court found the intent of the law to make sure that applicants for no-fault insurance be offered optional coverages in accordance with the law; because extra coverage was encouraged, it had to be

shown affirmatively that these coverages were rejected in writing.

In contending that retrospective operation would not further the purpose of this act, State Farm erroneously suggests that the purpose of 3404b has been satisfied by its offer of optional coverages and Mr. Bates' rejection. *Jones* foreclosed that route, not only for State Farm but for the Court as well. Thus, this Court cannot conclude that the purpose and effect of the no-fault law was satisfied by State Farm's noncompliance and thereby grant it the benefit of its omission. Therefore, failure to apply to all no-fault insurance contracts the terms of § 3404b, which were misconstrued by State Farm until brought to its attention in *Jones*, would frustrate the operation of the statute by creating a class of no-fault insureds who could not obtain the coverages that the statute was enacted to encourage.

3. Finally, State Farm contends that it had a right to rely upon past precedent, and administrative interpretations of § 3404b. In addition, it argues that retroactive operation of *Jones* would work an inequitable hardship upon the insurance industry.

First, as Judge Evans noted, *American Liberty Insurance Company v. Sanders*, 120 Ga.App. 1, 169 S.E.2d 342 (1969), upon which State Farm claims it relied in using an application with only one signature line, construed a different statute, one requiring merely rejection "in writing." The no-fault law, on the other hand, is a scheme requiring different options to be offered and that the "acceptance or rejection be indicated in spaces that are completed and signed." *State Farm v. Sweat, supra,* Slip op. at 21. The no-fault law is a new and unique creature in Georgia law, establishing its own rules and policies, separate from the older, rejected scheme of tort law.

Moreover, the reliance of State Farm upon a regulation of the Insurance Commissioner equally is misplaced.[13] Ga.Code Ann.

13. Neither State Farm nor defendant submitted a copy of the regulation to the Court. How-

ever, the following is what State Farm claimed it relied upon:

§ 56–3413b does not concern the Insurance Commissioner's authority to make binding rules and regulations concerning *application forms*, but only those "necessary for the implementation of this Chapter with respect to insurers providing the security required herein." *Compare* Ga.Code Ann. § 56–2410(1), requiring submission of application forms. In this regard, State Farm never submitted its application to the Commissioner for approval. *See,* Affidavit of Frank Parker, Exhibit A to the State's Brief. Finally, this regulation does not state that *one* signature is required. State Farm's doubt could be resolved only by reference to the statute.

As its concluding argument State Farm argues that application of *Jones* to pre-*Jones* accidents would produce substantial inequitable results. As noted before, much of the inequity claimed by the insurer stems from the post-risk nature of the § 3404b(c) notice requirements, which the *Jones* court already has approved. But it is important to realize that this requirement, under Georgia law, arose, not with *Jones,* but with the issuance of an automobile liability insurance policy that was not in conformance with the no-fault law. Therefore, the mandate of § 56–3404b, which State Farm became cognizant of only after *Jones,* does not operate to "punish" the insurer, but to effectuate the purpose of the no-fault law.

It is true that State Farm and its fellow insurers have an enormous amount of financial exposure, because the no-fault requirements reach back to affect policies under which claims previously have been adjusted.[14] However, assuming that this is "inequitable," it is not the type of "inequity" that the Georgia courts have considered in the past in other cases concerning retroactivity.

> Each application for a policy of motor vehicle liability insurance must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in this Section. All existing policyholders shall be afforded the opportunity to either accept or reject in writing the optional coverages required in this Section.

In effect, all retroactive actions touch events or relationships previously settled. However, the third *Chevron* factor, as applied in Georgia cases, primarily involves the component of justifiable reliance. Thus, the sales tax was not refunded because of justifiable reliance that the statute was constitutional, *Strickland v. Newton County, supra;* the due process requirements of notice were not applied to past year's support proceedings, because those who took under the old procedures were entitled to rely upon their award, *Allan v. Allan, supra;* an educational trust would not be disturbed after the judicial decision upon which it was based subsequently was rejected, *Walker v. Walker, supra;* nor would the definition of certain finance charges, permissible under recent case law, be ignored because the courts eventually construed the law differently, *Financeamerica Corporation v. Drake, supra.* These cases consistently are concerned with the effect of opening prior judgments, or reaching back in time to affect practices that had the approval of since-discarded judicial rules. *See generally, Northern Pipeline Construction Company v. Marathon Pipe Line Company,* —— U.S. ——, ——, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982).

From this analysis, it is evident that State Farm's contention of inequity lacks merit. There is no practice here, once mandated by the courts, but now abrogated under a different decision. This case does not involve an action which was mandated by the law, was adhered to in letter and in spirit, but later was found invalid. This case concerns State Farm's failure to follow the terms of a statutorily-imposed duty. "Prospective" application from the date State Farm recognized this duty, therefore, is not warranted.

Ga. Code of Rules and Regulations § 120–2–28–.06(4).

**14.** The insurers have already obtained relief from the Georgia Legislature by way of Senate Bill 207 (Act 1407), effective November 1, 1982. *Since the present law remains in effect until that date, the Court need not concern itself with the legal implications of the new Act.*

## V

State Farm's final argument in support of summary judgment is that application of *Jones* retroactively to Mr. Bates' case violates certain provisions of the United States and Georgia Constitutions.

### A.

■ First, State Farm argues that § 56–3404b is unconstitutionally vague so as to deprive it of due process. In this regard, it must be remembered that before the Court is a commercial, non-penal statute. Therefore, the Court must be lenient in evaluating its constitutionality. *Exxon Corporation v. Busbee*, 644 F.2d 1030, 1033 (5th Cir. 1981), *cert. denied,* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed. 239 (1981). In order to constitute a deprivation of due process, the statute must be "so vague and indefinite as really to be no rule or standard at all." *id.; A. B. Small Company v. American Sugar Refining Company,* 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925). As the *Exxon* court held,

> [U]ncertainty in this statute is not enough for it to be unconstitutionally vague; rather, it must be substantially incomprehensible.

*Exxon Corp. v. Busbee, supra.*

■ Under this standard, § 56–3404b easily passes constitutional muster. For federal constitutional purposes, the statute is amenable to some sensible construction. As stated previously, State Farm cannot rely successfully on precedent construing different statutes, or on the regulation which does not track the language of the statute, as proof of 3404b's vagueness. Moreover, if State Farm previously misinterpreted the statute, it can have only one meaning since *Jones.*

Nor is the statute a deprivation of due process under *Anderson v. Little & Davenport Funeral Home, Inc.,* 242 Ga. 751, 251 S.E.2d 250 (1978) and *City of Atlanta v. Southern Railway Company,* 213 Ga. 736, 101 S.E.2d 707 (1958). Those cases essentially hold that a statute violates due process if it is so vague and indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application. *id.* at 738, 101 S.E.2d 707. Both of those cases involved the terms which the statute did not define. Moreover, the statute here is clear: "Each insurer shall also make available on an optional basis the following coverage.... Each application ... must contain separate spaces for the insured to indicate his acceptance [or] rejection of each of the optional coverages ... and no such policy shall be issued ... unless these spaces are completed and signed by the prospective insured.... [A]ll named insureds ... who have not previously responded to an offer to accept or reject the optional coverages ... shall be given an opportunity to accept or reject, in writing, the optional coverages." Ga.Code Ann. §§ 56–3404b(a), (b) and (c).

To hold that this statute is unconstitutionally vague would permit anyone subject to the terms of a Georgia law to evade compliance because he differs with the "accepted" interpretation. Thus, there is no merit to State Farm's claim.

### · B.

■ State Farm also contends that retroactive application of *Jones,* i.e., the enforcement of § 56–3404b's terms as of the date of Mr. Bates' policy, impairs the obligation of contracts under *U.S.Const.* Art. I, § 10.[15]

■ This claim needs no lengthy analysis. State Farm's obligations arise from the terms of the statute, not *Jones.* When the policy of insurance was issued, State Farm was required to comply with § 56–3404b. Its obligations were consonant with the statute. *See, Reding v. Texaco, Inc.,* 598 F.2d 513, 519–520 (9th Cir. 1979). Thus, the terms of the statute, rather than impairing the obligation of the insurance contract, were incorporated into the contract. *Von*

---

15. State Farm also claims that retroactive application impairs contracts under *Ga.Const.* Art. I, § I, ¶ VII. Because the Court considers the Georgia provision *in pari materia* with the federal constitution, the Court will address only State Farm's federal contention.

*Hoffman v. City of Quincy,* 71 U.S. (4 Wall.) 535, 550, 18 L.Ed. 403 (1866). In short, State Farm had no relevant contract with Mr. Bates prior to the effective date of the statute, which the statute could impair.

 Finally, the Contract Clause is aimed at legislation, not a judicial construction like *Jones v. State Farm.*

In order to come within the provision of the Constitution of the United States, which declares that no state shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by some act of the legislative power of the State, and not by a decision of its judicial department only.

*Central Land Company v. Laidley,* 159 U.S. 103, 109, 16 S.Ct. 80, 81, 40 L.Ed. 91 (1895). *See also, Hoover v. West Publishing Company,* 447 F.2d 195, 198 (5th Cir. 1971).

Thus, State Farm states no claim under the Contract Clause.

### CONCLUSION

In many of these and other *Jones*-type cases on the Court's docket, there lurk additional issues which are affected by this Order only in that they now present ripe issues for decision. They (unexhaustively) include the effect of a release on a *Jones* claim; whether a *Jones* claim may be raised following cancellation of the policy; the effect of an assigned risk policy (AIP) on a *Jones* claim; and whether one other than a named insured has a cognizable *Jones* claim. Of course, these additional issues also exist in *Jones* cases which are not before the Court on summary judgment. For a list of those cases affected directly by this Order, refer to note 1, *supra.* Motions for summary judgment, etc., based on these additional claims in these eleven cases must be filed no later than September 15, 1982.

ACCORDINGLY, defendant's motion to add his wife as an additional defendant is DENIED; the motions to dismiss the complaints for declaratory judgment in Civil Action Numbers C81–262, –263, –264, –265 and –282 are DENIED. State Farm's mo-

tions for summary judgment in the cases listed in note 1 are DENIED.